## PEOPLE v. BYNUM

1. Criminal Law—Interrogation—Presence of Attorney—Constitutional Law—Constitutional Rights—Warnings—Federal Guidelines—Compliance.

   Police department's "Constitutional Rights Certificate of Notification" informing a suspect of his constitutional rights to remain silent and to have an attorney, retained or appointed, present before answering any questions or making any statement, and that he could exercise his rights at any time and not answer any questions or make any statement, sufficiently informed defendant of his right to have an attorney present during interrogation, as required by federal decisional guidelines.

2. Criminal Law—Interrogation—Extrajudicial Statement—Admissibility.

   Extrajudicial statement of defendant made during police interrogation was properly admissible where defendant was first warned of his constitutional rights to remain silent and to have an attorney, retained or appointed, present before answering any questions or making any statements, and that he could exercise his rights at any time and not answer any questions or make any statements.

3. Criminal Law—Evidence—Extrajudicial Statements—Admissibility—Evidentiary Hearing.

   Trial judge's statement that defendant had a right during an evidentiary hearing to rebut a police officer's testimony regarding the circumstances of defendant's extrajudicial statement made during interrogation, and that defendant's evi-

References for Points in Headnotes

[1–3] 21 Am Jur 2d, Criminal Law § 314.
[4] 21 Am Jur 2d, Crops § 358.
[5] 5 Am Jur 2d, Appeal and Error § 548 et seq.
[6] 30 Am Jur 2d, Evidence § 1170 et seq.

dentiary hearing testimony could not be later used against him unless he testified at his trial in chief, was a correct statement of the rule controlling the use to which a defendant's evidentiary hearing testimony can be put.

4. CRIMINAL LAW — WITNESSES — DEFENDANT'S TESTIMONY — CROSS-EXAMINATION.

A defendant in a criminal case is under no obligation to testify but once he voluntarily takes the witness stand on his own behalf, he is subject to cross-examination the same as any other witness.

5. APPEAL AND ERROR—INSTRUCTIONS TO JURY—OBJECTIONS.

Instructional error raised by defendant for the first time on appeal would not preclude the Court of Appeals from exercising its prerogative in searching for evidence of a clear miscarriage of justice even though defendant failed to object to the jury instructions in the trial court.

6. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—JURY—VERDICT.

The correct standard of proof in a criminal appeal is whether there was sufficient evidence to convince a jury of defendant's guilt beyond a reasonable doubt.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 January 6, 1970, at Detroit. (Docket No. 6,767.) Decided February 5, 1970. Leave to appeal denied April 2, 1970. 383 Mich 776.

Terry Bynum was convicted by a jury of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: LESINSKI, C. J., and J. H. GILLIS and QUINN, JJ.

LESINSKI, C. J.    Defendant Terry Louis Bynum was tried and convicted of manslaughter[1] by a Detroit recorder's court jury. He appeals alleging various errors. We affirm.

On the evening of November 21, 1966, Terry Bynum was riding in a car with his brother-in-law, Rudolph Rogers. Apparently Rogers was searching for his wife. When she was discovered, Rogers jumped out of the car and began beating her. The defendant also left the car and then became embroiled in a fight with Rogers. During the altercation Rogers sustained fatal knife wounds. The police subsequently arrested Bynum and conveyed him to police headquarters where he made a statement. At trial the plaintiff offered the statement of defendant into evidence. A *Walker*[2] hearing revealed that the defendant was advised of his constitutional rights[3] in the language of a so-called *Miranda* card—the Detroit police department's "Constitutional Rights Certificate of Notification." The trial court admitted the statement over defense counsel's objection.

Defendant argues that the warnings given by the police interrogators failed to conform to the guidelines set down in *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974). The certificate reads as follows:

---

[1] MCLA § 750.321 (Stat Ann 1954 Rev § 28.553).
[2] *People* v. *Walker* (*On Rehearing*, 1965), 374 Mich 331.
[3] See *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

## "DETROIT POLICE DEPARTMENT
## "CONSTITUTIONAL RIGHTS
## "CERTIFICATE OF NOTIFICATION

"I understand that:

"1. I have a right to remain silent and that I do not have to answer any questions put to me or make any statements.

"2. Any statement I make or anything I say can be used against me in a Court of Law.

"3. I have the right to have an attorney (lawyer) present before I answer any questions or make any statement.

"4. If I cannot afford an attorney (lawyer), one will be appointed for me by the Court prior to any questioning.

"5. I can decide at any time to exercise my rights and not answer any questions or make any statement.

"I understand that these are my rights under the law. I have not been threatened or promised anything, and I now desire and agree to answer any questions put to me or to make a statement.

"In the presence of:

| /s/ Det. Thomas McManus | /s/ Terry L. Bynum | |
|---|---|---|
| "Witness | Signature | |
| /s/ Det. Henry LaHousse | 11–21–66 | 4:15 a |
| "Witness | Date | Time |

"☑     This certificate of notification was read to the suspect, and he/she had an opportunity to read it. Further, the suspect was given an opportunity to ask any questions that he/she might have concerning this certificate and his/her rights.

"☐     Suspect is illiterate. He/she has had the rights under the law, as defined above, explained to him/her, and has agreed to answer questions or make a statement.

"☐     Suspect can read and write. The rights, as defined above, have been explained to him/her, and he/she has agreed to make a voluntary statement but has refused to sign this form.

"REMARKS   4:15 a 11-21-66   Bynum turned over a 3″ Brown & white Brown handle knife our Evid tag # 633403

/s/ Det. T. McManus

11-21-66      4:15 a

"Date        Time

           /s/ Det. Thomas McManus, Homicide

           Officer            DPD Unit

Homicide Bureau

"Place       /s/ Det. Henry LaHousse, Homicide

           Officer            DPD Unit"

It is defendant's contention that the certificate neglects to inform him of his right to have an attorney present *during* interrogation. Although the certificate could be more precise in this regard, the import of warnings 3, 4 and 5 is to that effect. We find compliance with the *Miranda* rule. The statement was properly admitted.[4]

Defendant's second claim of error concerns a statement the trial judge made during the *Walker* hearing. After the police officer testified as to the circumstances surrounding the interrogation, the trial court ruled the statement admissible. However, the court then withdrew its finding with the following statement in order to allow the defendant to rebut the officer's testimony:

"No. No, he has a right to take the stand. What he says can't be used against him. If he takes the

---

[4] Compare *People* v. *Ansley* (1969), 18 Mich App 659, where the record of the *Walker* hearing revealed *Miranda* warnings substantially less complete than those in the instant case.

stand later it can be used, but if he doesn't take the stand you can't mention it at all. Get his answers here now, he can meet this now at the *Walker* hearing so I am going to withdraw my finding. If you want to give him an opportunity, we have voluntariness and also direct at the trial even though I ruled that it is voluntarily admissible, as I read the case he has not had the opportunity to take the stand."

The defendant argues that this was not a correct statement of the rule controlling the use to which *Walker* hearing testimony can be put. We disagree. *People* v. *Walker* (*On Rehearing*, 1965), 374 Mich 331, states:

"We therefore release our jurisdiction of the cause and direct the recorder's court to assume jurisdiction to make a determination upon a separate record upon the issue of the voluntariness of the confession only. At this hearing, we hold the defendant may take the stand and testify for the limited purpose of making of record his version of the facts and circumstances under which the confession was obtained. We hold further that by so doing defendant does not waive his right to decline to take the stand on trial in chief, if retrial is ordered. Neither does he waive any of the other rights stemming from his choice not to testify. This we believe comports with the apparent intention of *Jackson* (v. *Denno* [1964], 378 US 368 [84 S Ct 1774, 12 L Ed 2d 908]) to require the issue of the voluntariness of a confession to be determined completely apart from and independent of the consideration of that issue by the jury which is considering guilt or innocence under established procedures."

The trial judge said nothing inconsistent with the above language. The defendant is under no obligation to take the stand at trial. However, once he does he is subject to cross-examination the same as

any other witness. *People* v. *Lloyd* (1967), 5 Mich App 717.

Defendant's third claim of error concerns the charge to the jury. No objections were raised below. *People* v. *Keys* (1968), 9 Mich App 482. However, we exercise our prerogative in searching for evidence of a clear miscarriage of justice. We find none here. Reading the instructions as a whole, we find they present a full, fair and impartial statement of the law of the case.

Defendant's final claim of error is that the verdict was against the great weight of the evidence. We repeat what we stated in *People* v. *Washington* (1966), 4 Mich App 453, 456:

" 'The last assignment of error reiterates an incorrect standard of proof, asserting the verdict is against the great weight of evidence. The correct standard in a criminal appeal is evidence sufficient to convince beyond a reasonable doubt.' *People* v. *Williams* (1962), 368 Mich 494."

See, also, *People* v. *Weems* (1969), 19 Mich App 553. Reviewing the record, we find there was sufficient evidence, if believed by the jury, to justify a finding of guilt beyond a reasonable doubt. *People* v. *Fred W. Thomas* (1967), 7 Mich App 519.

Affirmed.

All concurred.