## PEOPLE *v.* NIETO

1. CRIMINAL LAW—WITNESSES—PRELIMINARY EXAMINATION TRAN-
SCRIPT—RIGHT OF CONFRONTATION.

   A witness's testimony at preliminary examination may be used
   at trial whenever the witness cannot for any reason be produced
   at trial; however the reason for the witness's unavailability
   must be weighed against the defendant's constitutional right
   of confrontation (MCLA § 768.26).

2. CRIMINAL LAW—WITNESSES—PRELIMINARY EXAMINATION TRAN-
SCRIPT—GOOD FAITH.

   The preliminary hearing transcript of the testimony of a witness
   unavailable for trial may not be used at trial if the witness's
   absence from trial stems from the prosecution's lack of good
   faith efforts to secure the witness's presence (MCLA § 768.26).

3. CRIMINAL LAW—WITNESSES—PRODUCTION—GOOD FAITH.

   Prosecutor's efforts to secure the presence of an important wit-
   ness at defendant's trial were not sufficient to constitute good
   faith where the prosecutor made a few phone calls to the
   witness's family, delivered a subpoena to the police department
   for service, and the police sent the subpoena and a letter to
   the police in Chicago, where the witness lived, for help in
   locating the witness.

4. CRIMINAL LAW—WITNESSES—RIGHT OF CONFRONTATION.

   A defendant's right of confrontation includes not only the right
   to cross-examine the witness against him but also includes the
   occasion for the jury to weigh the demeanor of the witness.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 739, 740, 748, 758, 764.
[3, 5] 58 Am Jur, Witnesses § 3.
[4] 21 Am Jur 2d, Criminal Law §§ 333–344.

5. CRIMINAL LAW—WITNESSES—MATERIAL WITNESSES—PRODUCTION
—GOOD FAITH.

Prosecuting authorities in order to fulfill the "good faith" requirement in trying to produce non-Michigan, material witnesses at trial must, at the very least, utilize statutorily-provided procedures for securing the attendance of out-of-state witnesses (MCLA § 767.91).

Appeal from Lenawee, Rex B. Martin, J. Submitted Division 2 April 7, 1971, at Lansing. (Docket No. 9227.) Decided May 19, 1971. Leave to appeal denied, 385 Mich 771.

Juan Nieto was convicted of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney, for the people.

*Robert J. Baker,* for defendant on appeal.

Before: QUINN, P. J., and R. B. BURNS and MC-GREGOR, JJ.

R. B. BURNS, J. After nine days of trial, a jury found defendant Juan Nieto guilty of murder in the second degree.[1]

Testimony established that Juan and some of his relatives were accosted by the victim, Jesse Alvia, and some of Jesse's friends, following a nighttime wedding reception in Adrian, Michigan. This confrontation apparently stemmed from previous altercations between Jesse, and Juan and Juan's nephew.[2] After Jesse fired several shots from a pistol he fled

---

[1] MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

[2] Juan's nephew, Arthur Nieto, was accused, charged and jointly tried with Juan. The jury acquitted Arthur Nieto of any criminal responsibility.

across a street into a parking lot, with several people in pursuit. The defendant admits chasing Jesse across the street but denies that he caught and stabbed him. All of Juan's friends and relatives corroborate his story, while many of Jesse's friends contend that Juan caught Jesse and attacked him. Jesse was found a short distance from the parking lot a few minutes after the alleged attack dying or dead from 14 stab wounds.

Some of the most incriminating testimony came from the preliminary examination testimony of Placido Villegas. Villegas was not present at the trial so the prosecution read his preliminary examination testimony to the jury. Villegas claimed to have seen Juan Nieto chasing Jesse with a knife. Although other witnesses claimed that they saw Juan chase and attack Jesse, none of these testified that Juan had a knife in his hand. Due to the nature of Jesse's death, Villegas' testimony was noncumulative and highly incriminatory.

Defense counsel objected to the Villegas testimony on the ground that the prosecution had failed to make sufficient efforts to obtain Villegas' presence at trial. By statute, preliminary hearing testimony may be used at trial "whenever the witness giving such testimony cannot, for any reason, be produced at trial".[3] However, the reasons for the witness's unavailability at trial must be weighed against the defendant's constitutional right of confrontation.[4] *Barber* v. *Page* (1968), 390 US 719 (88 S Ct 1318, 20 L Ed 2d 255). The Michigan statute must give

---

[3] MCLA § 768.26 (Stat Ann 1954 Rev § 28.1049).

[4] US Const, Am 6; Const 1963, art 1, § 20. In *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923) the Supreme Court held the Sixth Amendment right of confrontation applicable to the states through the Fourteenth Amendment. The *Pointer* decision was subsequently given retroactive application. *Berger* v. *California* (1969), 393 US 314 (89 S Ct 540, 21 L Ed 2d 508).

way to the right of confrontation where a witness's absence from trial stems from the prosecution's lack of good faith efforts to secure the witness's presence. *Barber* v. *Page, supra.*[5]

The prosecutor's efforts to produce the witness in this case consisted of making a few telephone calls to Villegas' family[6] and delivering a subpoena for Villegas to the Adrian Police Department. The prosecutor testified that the Adrian Police Department sent the subpoena to the Chicago Police Department along with a letter requesting help in locating Villegas, who lived in Chicago, Illinois.[7]

Weighed against the defendant's right of confrontation the attempts by the prosecution in this case to secure the witness's presence fall short of the good faith effort required in *Barber*.

The fact that Villegas may have been subject to cross-examination at the preliminary hearing does not satisfy the right to confrontation since that right also includes "the occasion for the jury to weigh the demeanor of the witness". *Barber* v. *Page, supra,* 725.

---

[5] See, also, *People* v. *Tees* (1970), 23 Mich App 476. Michigan appellate courts have treated the "absent witness problem" as one involving a duty of the prosecutor rather than a right belonging to the criminal defendant. See 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 342, pp 409, 410. Most cases required the prosecutor to show "due diligence" in the production of material witnesses. See, *e.g.*, *People* v. *Zabijak* (1938), 285 Mich 164, 171, 172. Past judicial enforcement of the prosecutor's duty of "due diligence" indubitably enhanced, in most instances, the defendant's right to confrontation.

[6] Apparently Villegas was on the road trucking when the family was first telephoned. Villegas' mother was told to inform Mr. Villegas that his presence at trial was desired. No attempt was made to determine the name of Mr. Villegas' employer in order to determine where Mr. Villegas was trucking.

[7] No evidence that the Chicago Police Department received the letter or served the subpoena was introduced. In any event a Michigan subpoena has no force in Illinois or any other jurisdiction beyond Michigan's border. *Ann Arbor Bank* v. *Weber* (1953), 338 Mich 341.

At the very least, prosecuting authorities should utilize Michigan's statutory procedure to secure the attendance of sister state residents. The statute in effect at the time of trial (MCLA § 767.81 [Stat Ann 1954 Rev § 28.1021]) provided in part:

"If a person residing or being within any other state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in this state, is a material witness in a prosecution pending in a court of record in this state, a judge of such court may issue a certificate alleging these facts and direct the same to a judge of a court of record in the state in which the witness in question resides or is."[8]

The state of Illinois has a statute which commands persons within its borders to attend and testify in criminal prosecutions in this state. (38 Smith-Hurd, Ill Anno Statutes 1971 Cum Supp §§ 156-1 through 156-3.)

We are not unmindful of *People* v. *Serra* (1942), 301 Mich 124, but, in light of the *Barber* case, *Serra's* continuing validity is doubtful. The *Serra* case in our view falls within the category of cases mentioned in the *Barber* opinion which have been deprived of any continuing validity in criminal law due to "increased cooperation between the states".[9]

---

[8] This statute has been repealed and replaced by the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings: PA 1970, No 232, §§ 1, 2 (MCLA 1971 Cum Supp §§ 767.9–767.95 [Stat Ann 1971 Curr Mat § 28.1023(191–195)]).

[9] It should be noted that the *Barber* court, in footnote 4 of its opinion stated that:

"For witnesses not in prison, the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings provides a means by which prosecuting authorities from one state can obtain an order from a court in the state where the witness is found directing the witness to appear in court in the first state to testify." (390 US at 724 [88 S Ct at 1321, 20 L Ed 2d at 259], fn 14). The Uniform Act referred to in the footnote has been adopted in Michigan as of December 3, 1970. See fn 8, *supra*.

Since this case will be retried we feel it necessary to make the following statements:

(1) The testimony of Mr. Martinez and Mr. Lerma was highly material; thus the prosecutor had the right to impeach their credibility upon laying a proper foundation. See 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 438, pp 538–542, and MCLA § 767.40(a) (Stat Ann 1954 Rev § 28.980[1]).

(2) It was improper for the prosecutor to ask Mr. Martinez whether he had previously stated to Officer Zarate that he had actually seen Juan attack Jesse with a knife. Zarate did not say that Martinez had made the statement. The prosecutor should have known that he could not have impeached Mr. Martinez' negative answer to this query.

(3) The instructions read as a whole were proper. A trial judge may, *sua sponte,* instruct on lesser included offenses. *People* v. *Sweet* (1970), 25 Mich App 95.

Reversed and remanded for a new trial.

All concurred.