PEOPLE *v.* McINTOSH

1. CRIMINAL LAW—RIGHT OF CONFRONTATION—USE OF PRELIMINARY EXAMINATION TRANSCRIPT—CROSS-EXAMINATION.

Use of a transcript of complainant's preliminary examination testimony at defendant's trial did not deprive defendant of his right of confrontation where the complainant could not be located at the time of trial and defense counsel, contrary to defendant's allegation, competently cross-examined the complainant at the preliminary examination.

2. CRIMINAL LAW—USE OF PRELIMINARY EXAMINATION TRANSCRIPT—PROSECUTOR'S DUTY.

The people must show that they made a reasonable effort to locate an indorsed witness before the court can excuse the witness's absence and permit the people to use the witness's testimony given at the preliminary examination.

3. CRIMINAL LAW—WITNESSES—INDORSED WITNESSES—DUE DILIGENCE.

The sufficiency of the people's effort to produce a witness is a

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 8, 9] 21 Am Jur 2d, Criminal Law § 343 *et seq.*
[6] 47 Am Jur, Searches and Seizures § 18.
  Arrest, or search and seizure, without warrant on suspension or information as to unlawful possession of weapons. 92 ALR 490.
[7] 50 Am Jur 2d, Larceny §§ 49, 140 *et seq.*

question for the trial court; the trial court's decision will not be disturbed, absent a showing of an abuse of discretion.

4. CRIMINAL LAW—WITNESSES—INDORSED WITNESSES—DUE DILIGENCE.

The people showed that a reasonable effort had been made to secure witness's attendance at trial and the court properly allowed the witness's preliminary examination testimony to be used at trial where a subpoena was issued to compel the witness to testify, the police went to the witness's place of employment but were told by the witness's employer that he believed the witness was in jail in North Carolina, the police went to defendant's uncle and were told that the witness was living on Webb Street in Burlington, North Carolina, the police, after unsuccessfully trying to telephone the witness, contacted the Burlington police and requested their aid in locating the witness, although the North Carolina police failed to recontact the officers, the court upon learning of the witness's unavailability adjourned the trial to provide additional time to locate the witness and a Michigan State Police officer then called the Burlington police and, after learning nothing from them, called them twice on the day of trial, but received no further information.

5. CRIMINAL LAW—WITNESSES—INDORSED WITNESSES—DUE DILIGENCE.

The police made a diligent and reasonable effort to locate a witness, a friend of the defendant and his companion at the scene of the crime charged, where police officers made two trips to the witness's home but could not find him, and a police officer tried to locate the witness through the defendant, who was out on bond, but neither the officer nor the defendant's attorney knew where the defendant was.

6. SEARCHES AND SEIZURES—AUTOMOBILES—REASONABLENESS.

Search of defendant's car and seizure of a canvas bag containing a gas station's receipts was reasonable where police officers were told, when entering the police post, that a larceny had just been committed at the gas station, the officers proceeded directly to the gas station, arriving there about two minutes after the larceny, the officers were informed by the attendant that he suspected that the defendant was the person who had committed the larceny, and the defendant was still at the station.

7. Larceny—Larceny in a Building—Evidence—Sufficiency.

Defendant's conviction of larceny in a building was based on sufficient evidence where the record reveals that the arresting police officers had been advised that a larceny had just been committed at a gas station, that the attendant thought the defendant, who was still at the station when the police arrived, committed the larceny, that the attendant testified that he encountered the defendant in the gas station office and the defendant had a surprised look on his face and a bulge under his sweater, and the attendant testified that the defendant's companion did not leave the defendant's car until after the canvas bag containing the money had been discovered missing, and that the stolen canvas bag was found under the front seat of defendant's car.

Dissent by Levin, J.

8. Criminal Law—Indorsed Witnesses—Due Diligence.

*The people, before they may read the preliminary examination testimony of a witness they are unable to produce at trial, are obliged to use due diligence to locate the missing witness and to use due diligence to secure his attendance at trial even if the witness has moved out-of-state; even though out-of-state authorities might not honor a request to return the witness, a request must be made.*

9. Criminal Law—Witnesses—Indorsed Witnesses—Due Diligence.

*Prosecution's efforts to locate the complaining witness were inadequate and, thus, the witness's preliminary examination testimony should not have been allowed to be used at trial, where the police, who had been told that the witness was either in prison in North Carolina or living in Burlington, North Carolina, during over a month's adjournment ordered to allow time to locate the witness, made one telephone call to the Burlington police, spoke to the person in charge of the record bureau, and requested a letter, which was never sent, stating the witness's address, and the prosecution made no effort to communicate with the North Carolina Corrections Department.*

Appeal from Genesee, Elza H. Papp, J. Submitted Division 2 November 6, 1970, at Lansing. (Docket No. 8515.) Decided June 24, 1971. Leave to appeal granted, 386 Mich 762.

Franklin McIntosh was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Robert F. Leonard*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief Assistant Prosecuting Attorney, for the people.

*William Goldberg*, for defendant on appeal.

Before: LEVIN, P. J., and T. M. BURNS and J. E. HUGHES,* JJ.

T. M. BURNS, J. Defendant appeals his jury conviction of larceny in a building. MCLA § 750.360 (Stat Ann 1954 Rev § 28.592).

On April 27, 1967, defendant and a companion, Joseph Pritchard, stopped at a service station for automobile repairs on defendant's car. While defendant and Pritchard were still at the station, the attendant, Jerry Wrenn, noticed that a canvas bag containing the station's receipts was missing. Wrenn phoned the State Police who immediately dispatched two officers to the service station. Upon their arrival, the officers were told by Wrenn that he thought the defendant was the person who took the canvas bag. The officers then searched defendant, his companion, and defendant's car where they found the missing canvas bag. Defendant was charged with larceny in a building, MCLA § 750.360 (Stat Ann § 28.592), and was convicted by a jury and sentenced to serve from 3-1/2 to 4 years in prison. After his motion for a new trial was denied, defendant brought this appeal contending that the court below committed several reversible errors.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The complainant, Jerry Wrenn, could not be located at the time of the trial for purposes of testifying. He had, however, testified at the preliminary examination and that testimony was admitted at trial. Defendant contends that the prosecution's failure to produce the witness at trial violates the confrontation clause of both the United States Constitution[1] and the Michigan Constitution.[2]

The United States Supreme Court held that the Sixth Amendment right to the confrontation of witnesses is applicable to the states in *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923). The Supreme Court there reversed petitioner's conviction because it was based in part upon testimony taken at the preliminary examination where defendant was not represented by counsel. The Court pointed out, however, that the result would have been quite different had the defendant been represented by counsel and the witness been cross-examined:

"The case before us would be quite a different one had Phillips' statement been taken at a full fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine."

In the case at bar, defendant was represented by counsel at the preliminary examination and counsel did conduct a cross-examination of the complainant. Although defendant now claims that counsel was inexperienced and that he should have questioned Wrenn about his criminal record for credibility purposes, defendant, in his brief, offers nothing to establish either defense counsel's inexperience or the existence of any criminal record which Wrenn might have. This Court finds nothing to indicate that de-

---

[1] US Const, Am VI.

[2] Michigan Const 1963, art 1, § 20.

fendant's counsel's performance at the preliminary examination was anything but competent. We find, therefore, that defendant was not deprived of his right to confrontation since the witness was adequately cross-examined at the preliminary examination.

Michigan does require, however, a showing by the prosecution that a reasonable effort has been made to locate the witness before the prior testimony may be admitted.[3] Defendant contends that such a reasonable effort was not made in the case at bar.

Detective Mungeon of the Michigan State Police testified that a subpoena was issued for Wrenn on July 10, 1968. The first place where he attempted to serve the subpoena was the situs of the crime, the gasoline station where Wrenn had been an attendant. Wrenn's boss, Mr. Buchanan, told Detective Mungeon that Wrenn's real name was Danny Hill and that he believed that he was in prison in North Carolina.

Detective Mungeon and Buchanan then went to an uncle of Wrenn in Flint who advised them that Wrenn was in Burlington, North Carolina, living on Webb Street.

Detective Donovan then testified that after learning that Wrenn was in North Carolina, he made long distance calls to that state attempting to contact him. These efforts were without results. Donovan also contacted the Burlington, North Carolina, police and requested them to locate witness Wrenn and also informed them that complainant also went by the name of Danny Hill. Donovan was informed that they would attempt to locate Wrenn, but he testified that the Burlington police never contacted him.

The trial judge, upon learning that Wrenn was unavailable, adjourned the trial from July 23, 1968,

---

[3] See also *People* v. *VanVorce* (1927), 240 Mich 75, 78.

to October 29, 1968. Trooper Dailey of the Michigan State Police testified that he received the subpoena for Wrenn on October 22, 1968. He stated that he called the Burlington, North Carolina, Police Department and that they told him that they would contact him by certified mail if Wrenn could be located. The North Carolina police also told Dailey that they were running a check to determine whether Wrenn was incarcerated in one of their institutions. Dailey stated that he received no communication from the North Carolina police, and, therefore, on the day of trial he made two more calls to the North Carolina authorities but received no further information.

The trial judge, after hearing the above testimony, was satisfied with the attempts of the state to locate the complainant. Under *People* v. *Boyles* (1968), 11 Mich App 417, 422, the sufficiency of the effort to produce a witness is a question for the trial court and its determination will not be disturbed, absent a showing of an abuse of discretion by the trial judge. Based upon the above testimony, we find no such abuse of discretion, and therefore find no error by the trial judge in admitting the complainant's prior testimony.

Defendant also contends that the people did not make a diligent and reasonable effort to produce defendant's companion at the scene of the crime, Joseph Pritchard, who had been indorsed as a witness. Although we have no confrontation issue involved here, the people must still show that a reasonable effort was made to produce the witness.[4]

Detective Mungeon was recalled to the stand to establish the prosecution's diligent effort to locate witness Pritchard. He stated that he received the

---

[4] *People* v. *Lewis* (1970), 25 Mich App 132.

subpoena for Pritchard about the same time he received the subpoena for Wrenn. Detective Mungeon then testified that he was informed that Pritchard was in Detroit so he sent the subpoena to the State Police there. The State Police then made a check of Pritchard's street address in Detroit but could not locate him.

Detective Mungeon then testified that he had been informed that Pritchard might be in the State Prison in Jackson, Michigan, but that a check with the record officer there indicated that Pritchard had been discharged in 1962 and that they had no further record of him.

Detective Dailey, who had also attempted to locate the complainant, testified that he had personally gone to Pritchard's last known address, but that the party living there had never heard of Pritchard. Dailey also stated that since defendant and Pritchard were friends, he had attempted to locate Pritchard through the defendant who was out on bond at the time. However, neither Dailey nor defendant's attorney were able to locate the defendant for purposes of finding out if defendant knew the whereabouts of his friend.

The trial court, after hearing the above testimony, expressed itself satisfied with the state's effort to produce indorsed witness Pritchard. We find nothing in the record to indicate that the trial court abused its discretion in ruling that the state's effort had been sufficiently diligent.[5] We therefore find defendant's second contention to be without merit.

The defendant next submits that the trial court erred in denying defendant's pretrial motion to suppress the evidence (the canvas bag and its contents) obtained from a search of the defendant's automobile.

---

[5] *People* v. *Boyles, supra.*

In *People* v. *McDonald* (1968), 13 Mich App 226, a case involving the search of an automobile, this Court stated at pages 232, 233:

"The Constitutions do not prohibit all warrantless searches. Where a warrant has not been obtained, the validity of the search depends upon the law's appraisal of the reasonableness of the search, only unreasonable, warrantless searches and seizures being barred. Searches, incident to a lawful arrest, or following hot pursuit for instruments used in the commission of crime, its fruits, contraband and means of escape have been held to be reasonable."

In the present case officers of the Michigan State Police testified that they entered the police post about 6:55 p.m. on April 25, 1967, and were informed by the desk corporal that a larceny had just been committed at Buchanan's Gulf Station on Miller Road. The officers proceeded directly to the service station and arrived there about two minutes later.

Upon their arrival the officers were informed by Jerry Wrenn, the attendant, that defendant, who was still at the station was the person he suspected of committing the larceny. The officers then proceeded to search the defendant and defendant's car. One of the officers then found the canvas bag, which was identified by Wrenn as the one missing, under the front seat on the passenger side of the car.

The above facts indicate that the search was not "unreasonable" as that term has been interpreted under the Fourth Amendment. The officers had been informed by Wrenn that a larceny had been committed and that he believed defendant had committed it. This certainly is sufficient to give the officers probable cause to believe that defendant had committed a felony, and therefore the search was not

unreasonable.[6]  We therefore hold that the trial
court was correct in denying the motion to suppress
the evidence.

Defendant also contends that the evidence pro-
duced at trial was insufficient to establish defend-
ant's guilt beyond a reasonable doubt.  The thrust of
defendant's argument seems to be that since the
automobile in which the police found the contraband
was occupied by both Pritchard and the defendant,
it was impossible for the prosecution to prove that
it was defendant rather than Pritchard who placed
the canvas bag under the front seat.

A review of the record reveals the following: two
State Police officers testified that they were informed
by the desk corporal that a larceny had just been
reported at Buchanan's Gulf Station; upon their ar-
rival at the station, an attendant, Jerry Wrenn, in-
formed them that he thought that defendant was the
one who had taken the canvas bag containing the
station's receipts; after a search of defendant, his
companion, and the automobile, they located the
canvas bag under the automobile's front seat.

Jerry Wrenn, the attendant, testified that he had
entered the office from the rear of the station where
he encountered the defendant who was alone.
Wrenn stated that defendant had a surprised look
on his face and had a bulge under the sweater he was
wearing.  Wrenn then testified that he noticed that
the receipts bag was missing and immediately called
the police.

Another attendant testified that he saw the de-
fendant go into the station and go back and lean in-
to the car.  He also testified that defendant's com-

---

[6] *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11
L Ed 2d 777); *Warden, Maryland Penitentiary,* v. *Hayden* (1967), 387
US 294 (87 S Ct 1642, 18 L Ed 2d 782).

panion did not leave the car until after the canvas bag was discovered missing.

The above testimony shows sufficient evidence, if believed by the jury, to justify a finding of guilty beyond a reasonable doubt.[7]

Defendant raises three other issues which are: (1) was it error for the trial court to allow testimony about the canvas receipts bag because the prosecution failed to produce said bag at the trial; (2) was it error to permit a police officer who had interviewed the defendant after his arrest to testify as to the content of that interview even though he had taken notes during the interview but did not have those notes with him at the time of trial; and (3) is defendant entitled to a reversal based upon certain alleged comments by the prosecutor during closing argument.

Defendant raised no objection at the trial to any of the three alleged errors. This Court will not, therefore, consider any of these questions unless, in our opinion, the errors have resulted in a clear injustice.[8] A reading of the entire record, especially the portions of the testimony which we set forth in the preceding issue, convinces us that the alleged errors, if true, could not have resulted in the miscarriage of justice which is required before we may reverse.[9]

Affirmed.

J. E. Hughes, J., concurred.

Levin, P. J. (*dissenting*). The people's efforts to locate and produce the missing witness, Jerry Wrenn, also known as Danny Hill, whose prelimi-

---

[7] *People* v. *Bynum* (1970), 21 Mich App 596.
[8] *People* v. *Jackson* (1969), 17 Mich App 675.
[9] MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096).

nary examination testimony was read at McIntosh's trial, were inadequate. The people should not have been allowed, over McIntosh's objection, to read Wrenn's testimony at the trial.

At a pretrial hearing on July 23, 1968, Sergeant Mungeon of the Michigan State Police, testified that on July 18, 1968, he spoke to the owner of the gasoline station that was robbed and where Jerry Wrenn used to work. The owner told Sergeant Mungeon that Wrenn's true name was Danny Hill and he believed he was in prison in North Carolina. The same day Wrenn's uncle told Mungeon that Wrenn was in Burlington, North Carolina, on Webb Avenue. Mungeon gave this information to Sergeant Donovan of the prosecutor's office.

Sergeant Donovan also testified at the July 23rd hearing. After hearing from Sergeant Mungeon, Donovan said he telephoned the information operator in Burlington, North Carolina, and learned that no one named Hill or Wrenn who might be living on Webb Avenue had a telephone listing. He then telephoned the Burlington Police Department and was told that they would check "and if they did come up with a Hill living in or around Burlington, they would advise me. And I have heard nothing from them." In response to a question from the judge, he said that he had not communicated with the North Carolina correctional authorities to determine whether Wrenn was in prison.

At the conclusion of the July 23rd hearing, the judge ruled that there had not been an adequate search for Wrenn. The trial was adjourned until October 29, 1968, with the understanding that an effort would be made to obtain something in writing from the North Carolina authorities. The judge offered to assist the prosecutor in bringing about Wrenn's return to Michigan if he was located.

On October 29, shortly before the trial was to begin, Sergeant Donovan testified that following the July 23rd hearing he did not communicate further with the authorities in North Carolina and on October 17th turned the subpoena for Wrenn back to Sergeant Mungeon. Mungeon did not testify on October 29.

Detective Dailey of the Michigan State Police testified that on October 22 he received the subpoena from Sergeant Mungeon. Dailey telephoned the Burlington Police Department and spoke to a woman, Sudja Isley, in charge of the record bureau and told her that he needed a "certified letter" from her stating the whereabouts of Jerry Wrenn alias Danny Hill. She said she would communicate with the chief of police and they would make another check and send a registered letter. The promised letter had not been received. On the day of the trial Dailey made two telephone calls. He spoke with the sergeant on the desk at the Burlington Police Department but he could not find Sudja Isley on the premises. The second telephone call went to Sergeant Corey in Lansing headquarters to determine if a letter from the Burlington Police Department had arrived in the morning's mail—there was no letter. Although it was his understanding that Wrenn was returned to North Carolina as an escapee, Detective Dailey had made no effort to communicate with that state's correctional authorities.

In summary, the prosecutor had two leads: (1) Wrenn was in North Carolina prison; (2) he was living in Burlington, North Carolina, on Webb Avenue.

The record does not show that any effort whatsoever was made to communicate with the State Department of Corrections of North Carolina. The

lead that Wrenn was in a North Carolina prison was not followed through at all.

The record does not show what efforts, if any, were exerted by the Burlington police to locate Wrenn. We have no way of knowing whether Sudja Isley ever communicated with her chief or checked her files or made any effort to find Wrenn. Her failure to send the promised letter suggests that she may not have been entirely dependable in her work habits.

In arguing before the judge the question of the adequacy of the efforts to locate Wrenn, the prosecutor took the position that all the people were obliged to show was that Wrenn had left the jurisdiction and that the people had no affirmative obligation to seek his return from out-of-state.

However, in *Barber* v. *Page* (1968), 390 US 719 (88 S Ct 1318, 20 L Ed 2d 255), the United States Supreme Court declared that, even though local authorities might not honor a request from a foreign jurisdiction to return a witness, the request must be made.[1] Thus, if the prosecutor wished to use Wrenn's preliminary examination testimony he was obliged both to use due diligence to attempt to locate Wrenn and, if he were located, due diligence to attempt to secure his attendance, if need be from out-of-state, at McIntosh's trial.[2]

---

[1] In *Barber* v. *Page* the United States Supreme Court held that the absence of a witness from the jurisdiction would not justify the use at trial of preliminary hearing testimony unless the State had made an adequate effort to secure the witness's presence. That ruling was given retroactive effect in *Berger* v. *California* (1969), 393 US 314 (89 S Ct 540, 21 L Ed 2d 508).

[2] See *In re Montgomery* (1970), 2 Cal 3d 863 (87 Cal Rptr 695, 471 P2d 15); *Satterfield* v. *State* (1970), 248 Ark 395 (451 SW2d 730).

Moreover, in 1937, North Carolina adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Laws 1937, ch 217, 56 GS §§ 8–65 to 8–70). Before the commission of the offenses charged in this case, Michigan had adopted similar provisions for the attendance of witnesses in criminal cases both in this and other states. See MCLA §§ 767.80, 767.81

The prosecutor's mistaken understanding of the scope of his obligation may explain his total inaction between July 23 and October 22. He left himself barely seven days—from October 22 to the scheduled trial date of October 29—to attempt to locate Wrenn.

Recently in *People* v. *Nieto* (1971), 33 Mich App 535, our Court ordered a new trial on the ground that the prosecutor's efforts to produce a witness had been inadequate on these facts: the witness, a long-haul truck driver, lived in Chicago, Illinois. The efforts to produce him consisted of telephone calls to his family in Illinois and the mailing of a subpoena to the Chicago Police Department with the request that it render assistance. We declared: "Weighed against the defendant's right of confrontation the attempts by the prosecution in this case to secure the witness's presence falls short of the good faith effort required in *Barber*".[3]

In the present case, one telephone call to North Carolina between July 23 and October 29 is not an adequate effort to locate a missing witness. Sudja Isley may have forgotten to speak to the chief of police. She may have done nothing. In all events, no effort was made to determine from the North Carolina correctional authorities whether Wrenn was, indeed, imprisoned[4] or, if not, discharged on

---

(Stat Ann 1954 Rev §§ 28.1020, 28.1021); repealed by PA 1970, No 232, which enacted substitute provisions in conformity with the uniform act which can be found in MCLA 1971 Cum Supp § 767.91 *et seq.* (Stat Ann 1971 Cum Supp § 28.1023 [191] *et seq.*). See, also, *People* v. *Nieto, supra.*

[3] *Barber* v. *Page, supra.*

[4] Where the people fail to pursue leads that might, if diligently pursued, lead them to a missing witness they may not use preliminary examination testimony of the witness at the defendant's trial. *People* v. *Redd* (1969), 273 Cal App 2d 345 (78 Cal Rptr 368); *Satterfield* v. *State, supra. Cf. State* v. *LaFernier* (1969), 44 Wis 2d 440 (171 NW2d 408).

See, also, *Newton* v. *State* (Okla Crim, 1965), 403 P2d 913, 916. where the Court of Criminal Appeals of Oklahoma declared:

parole and, if so, who was his parole officer. The failure of Sudja Isley to respond within one week does not establish either that Wrenn was not in a North Carolina prison or that he could not be found with reasonable exertion of effort or that North Carolina was unwilling to respond to inquiries from Michigan or to extend other needed cooperation.[5]

"Due diligence implies more than partial notice, and last-minute activities. Had the county attorney been more attentive to the issuance of his subpoenas when the matter was set down for trial, the sheriff would have been provided more opportunity to locate the witness. But, in this case, it is obvious that the search for the witness took place at the last minute, which is not due diligence."

[5] See *People* v. *Crable* (1971), 33 Mich App 254 where we held that the trial judge erred in finding due diligence. A physician who had examined the complaining witness in a rape case shortly after the incident was indorsed as a *res gestae* witness. The process server received the subpoena for the physician about a week before the trial. He was informed that the physician had left the hospital where he had been employed and was touring the country prior to leaving for Africa as a medical missionary. No further effort was made to locate him or to discover whether he intended to return to the county before leaving the country. We declared:

"To wait until a week before trial to serve the subpoena and then, upon finding the doctor no longer employed at the hospital, to simply accept the word of other employees that the doctor was no longer in the area, does not constitute sufficient effort to satisfy the requirement of due diligence." Similarly, see *People* v. *Barker* (1969). 18 Mich App 544.