PEOPLE v McINTOSH

OPINION OF THE COURT

1. CRIMINAL LAW—WITNESSES—OUT-OF-STATE WITNESSES—PRODUC-
TION OF WITNESS FOR TRIAL—CONFRONTATION—DILIGENCE—CONSTI-
TUTIONAL LAW.

The prosecution must show due diligence in their efforts to
produce witnesses at trial in satisfaction of the Sixth Amend-
ment confrontation right and it would not be due diligence, by
itself, where police were told that a res gestae witness, indorsed
on the information, was living on a certain street in a city in
another state under either of two names, and the police con-
tacted telephone information for that city and were told that
there was no one by either of those names listed on that street
because the negative response received from the telephone
operator is of doubtful probative value as, at best, this showed
only that no telephone was listed in those names on that street,
not that the witness was not living there (US Const, Am VI).

2. CRIMINAL LAW—WITNESSES—OUT-OF-STATE WITNESSES—PRODUC-
TION OF WITNESS FOR TRIAL—DILIGENCE.

Asserted request to police department of a city in another state to
check on the whereabouts of a res gestae witness, indorsed on
the information, from which department no reply was ever
received, required the prosecution to show, in writing, that
unsuccessful attempts were made to locate the witness; if the
police of that city were unwilling to do this, due diligence
required the prosecution to resort to other means and the fact
that an attempt may be unsuccessful does not justify the
prosecution's failure to make that attempt.

3. CRIMINAL LAW—WITNESSES—PRODUCTION OF WITNESS FOR TRIAL—
DILIGENCE—PRELIMINARY EXAMINATION TESTIMONY—TRIAL.

It was error to allow a witness's preliminary examination testi-
mony to be read at trial where the prosecutor did not show due

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 6] 21 Am Jur 2d, Criminal Law § 340.
[4] 21 Am Jur 2d, Criminal Law § 442.
[6] 58 Am Jur, Witnesses § 12.

diligence in his efforts to produce the res gestae witness, indorsed on the information, at trial.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION TESTIMONY—TRIAL—STATUTES—CONSTITUTIONAL LAW.

The introduction of preliminary examination testimony at trial is governed by statute in Michigan, but the statute must be interpreted in a manner consistent with prevailing constitutional authority (MCLA 768.26).

5. CRIMINAL LAW—WITNESSES—PRODUCTION OF WITNESS FOR TRIAL—DILIGENCE—DISCRETION.

Trial court did not abuse its discretion in finding due diligence on the part of the prosecution in the efforts that were made to locate and produce a res gestae witness, indorsed on the information, where the prosecution had no specific leads as to that witness's whereabouts.

DISSENTING OPINION

T. E. BRENNAN, J.

6. CRIMINAL LAW—WITNESSES—OUT-OF-STATE WITNESS—STATUTES.

*Michigan was powerless to have obtained the attendance of a witness from another state even if his whereabouts in that state had been known because the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings was not enacted in Michigan until after the trial in the case at bar. (MCLA 767.91 et seq.).*

Appeal from Court of Appeals, Division 2, Levin, P. J., and T. M. Burns and J. E. Hughes, JJ., affirming Genessee, Elza H. Papp, J. Submitted November 10, 1972. (No. 7 November Term 1972, Docket No. 53,582.) Decided February 20, 1973.

34 Mich App 578 reversed.

Franklin McIntosh was convicted of larceny in a building. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Daniel S. Seikaly,* Assistant Defender), for defendant on appeal.

T. G. KAVANAGH, J. Defendant appeals his conviction of larceny from a building MCLA 750.360; MSA 28.592. The Court of Appeals[1] affirmed, LEVIN, J. dissenting.

On April 25, 1967, defendant and a companion, Joseph Pritchard, drove into Buchanan's Gulf Station on Miller Road in Flint. Defendant claimed to be having some trouble with the engine of his car. At this time there were two employees on duty at the gas station. One, C. O. Wallace, began to check the engine of defendant's car. The other, Jerry Wrenn, was at the rear of the station burning trash. While Wallace was checking the engine, Pritchard left the car to use the washroom. Upon his return, defendant left to use the washroom. Minutes later, Wrenn entered the station by a rear door, and found defendant inside. Defendant explained that he was returning the key to the washroom, and left. Thereupon Wrenn discovered that the drawer in which the day's receipts had been kept was open, and that the canvas bag containing the money was gone. Wrenn called the state police, who responded immediately. They questioned defendant, who consented to a search. Defendant was made to undress completely, but nothing was found. The police then searched de-

---

[1] 34 Mich App 578 (1971).

fendant's car, and the canvas bag containing the money was found under the front seat.

A preliminary examination was held on May 3. The only witness was Wrenn, who was cross-examined briefly by defendant's attorney. On May 12, an information was filed against defendant and Pritchard. This case was dismissed on November 6, with a new complaint being filed the next day against defendant alone. A second preliminary examination was held on November 15. Wrenn testified that defendant had a startled look on his face when he (Wrenn) came into the station, that the back of defendant's sweater was bunched as if something bulky was being carried underneath it, and that upon leaving the station, defendant leaned into the front seat area of his car (where the money was found). A further information was filed December 4, which indorsed Wrenn as a witness and on June 19, 1968, Pritchard was indorsed thereon as a witness.

At trial, neither Wrenn nor Pritchard was present.

The trial court ruled that the prosecutor had made a sufficient attempt to produce the indorsed witnesses, and allowed Wrenn's November 15 preliminary examination testimony to be read to the jury.

The thrust of defendant's argument on appeal is that he was deprived of his right to confront the witnesses against him guaranteed to him by the Sixth and Fourteenth Amendments of the Constitution of the United States. More specifically, he argues that the failure of the prosecution to produce indorsed res gestae witnesses Wrenn and Pritchard at trial, and the introduction into evidence of Wrenn's preliminary examination testimony, constitute error and require reversal.

We first examine the failure to produce Wrenn at trial. In their effort to locate Wrenn, the police checked at his residence and his place of employment in Flint. They were told that Wrenn had left Michigan, and could now be found in North Carolina. One informant told them that Wrenn was in prison in North Carolina, the other that he was living on Webb Avenue in Burlington (possibly under the name "Danny Hill").

The police efforts to pursue these leads were:

1) They contacted telephone information for Burlington and were told that there was no Wrenn or Hill listed on Webb Avenue.

2) They contacted the Burlington Police Department and asked them to check on the whereabouts of Wrenn. No reply was ever received from the Burlington Police.

North Carolina prison authorities were never contacted before trial.

The sufficiency of prosecution attempts to produce witnesses at trial in satisfaction of the Sixth Amendment confrontation right is the subject of the recent Supreme Court case of *Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968). In *Barber* the Court held that the prosecution must show due diligence in their efforts to produce such witnesses. The efforts in this case will be examined with reference to this constitutional standard.

The negative response received from the telephone operator in Burlington is of doubtful probative value. At best, this showed only that no telephone was listed in the name of Wrenn or Hill on Webb Avenue, not that Wrenn was not living there. By itself, this would not be due diligence.

With reference to the asserted request made to the Burlington Police Department to check on

Wrenn's whereabouts, there is nothing to indicate that a check was ever made. In such a case, the prosecution must show, in writing, that unsuccessful attempts were made to locate the witness. If the Burlington Police were unwilling to do this, due diligence required the prosecution to resort to other means.

The most specific lead was not checked at all by the prosecutor. No effort was made by him to contact North Carolina Prison authorities, and although defendant's appellate counsel, subsequent to trial, found that Wrenn was not in a North Carolina prison, this is not determinative. The fact that an attempt may prove unsuccessful does not justify the prosecution's failure to make that attempt, *Barber, supra.*

We hold therefore that the prosecutor did not show due diligence in his efforts to produce Wrenn at trial.

As a result, it was error to allow Wrenn's preliminary examination testimony to be read at trial. While the introduction of preliminary examination testimony at trial is governed by statute[2] in Michigan, the statute must be interpreted in a manner consistent with prevailing constitutional authority.[3]

The circumstances with regard to the non-production of Pritchard are somewhat different. The prosecution had no specific leads as to his whereabouts. They were simply told that he had left the state. In these circumstances, we find that it was not an abuse of discretion for the trial court to find due diligence on the part of the prosecution in the efforts that were made to locate and produce Pritchard.

[2] MCLA 768.26; MSA 28.1049

[3] See for example, *People v Nieto,* 33 Mich App 535 (1971).

Reversed and remanded.

T. M. KAVANAGH, C. J., and SWAINSON and WIL-
LIAMS, JJ., concurred with T. G. KAVANAGH, J.

T. E. BRENNAN, J. *(dissenting)*. The decision of
the Court of Appeals should be affirmed.

Included in the appendix in this cause is a letter
from the State Appellate Defender to the Burling-
ton, North Carolina, Police Department, seeking
information concerning the whereabouts of the
witness Jerry Wrenn, alias Danny Hill. Stamped
on the bottom of that letter is the following:

"A search of our files fail to disclose any criminal
data pertaining this subject
· This is not supported by fingerprints

N. C. Dept. of Correction
Records Section
Ident. Division
Raleigh, N. C. 27603"

*Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L
Ed 2d 255 (1968), is to be distinguished. There, the
whereabouts of the out-of-state witness was known.

"By the time petitioner was brought to trial some
seven months later, Woods was incarcerated in a fed-
eral penitentiary in Texarkana, Texas, about 225 miles
from the trial court in Oklahoma."

*Barber* held that the prosecution had the duty to
*ask* for the witness, quoting the dissenting opinion
in the Circuit Court of Appeals:

"[T]he possibility of a refusal is not the equivalent of
asking and receiving a rebuff."

The *Barber* opinion goes on to point out:

"[T]he sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence."

*Berger v California,* 393 US 314; 89 S Ct 540; 21 L Ed 2d 508 (1969), was an instance of an out-of-state witness who was at liberty. There was evidence in *Berger* that the out-of-state witness was in Colorado. His relatives and employer were contacted. Two telegrams were allegedly received from the witness. Still, no subpoena was issued to secure his appearance. The Court held that *Barber v Page* required consideration as to whether the state had made a good faith effort to secure the witness' presence.

The *Barber* Court conceded that until the time of that decision, the general rule permitted the use of previous testimony of an out-of-state witness on the ground that the process of the court was ineffectual to secure his appearance.

Thereupon, *Barber* says:

"Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law.[4]"

---

[4] For witnesses not in prison, the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings provides a means by which prosecuting authorities from one State can obtain an order from a court in the State where the witness is found directing the witness to appear in court in the first State to testify. The State seeking his appearance must pay the witness a specified sum as a travel allowance and compensation for his time. As of 1967 the Uniform Act was in force in 45 States, the District of Columbia, the Canal Zone, Puerto Rico, and the Virgin Islands. See 9 Uniform Laws Ann. 50 (1967 Supp.). For witnesses in prison, quite probably many state courts would utilize the common-law writ of habeas corpus *ad testificandum* at the request of prosecutorial authorities of a sister State upon a showing that adequate safeguards to keep the prisoner in custody would be maintained."

Of course, the Uniform Act to Secure Attendance of Witnesses from Without a State was not enacted in Michigan until after the trial in the case at bar. See 1970 PA 232,[1] effective December 3, 1970.

Thus, Michigan was powerless to have obtained the attendance of Wrenn from North Carolina *even if his whereabouts in that state had been known.*

The conviction should be affirmed.

Levin and M. S. Coleman, JJ., did not sit in this case.

---

[1] MCLA 767.91 *et seq.;* MSA 28.1023(191) *et seq.*—Reporter.