**Minor C. SMITH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–621.**

Court of Criminal Appeals of Oklahoma.

Feb. 13, 1976.

Jack Shears, Jr., Shears & Shears, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Minor C. Smith, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Kay County, Case No. CRF–74–65, for the offense of Unlawful Delivery of LSD, in violation of 63 O.S.1971, § 2–401, ¶ B 1. His punishment was fixed at a term of not less than fifteen (15) years or more than twenty (20) years in the State penitentiary with assessment of fine in the amount of One Hundred ($100.00) Dollars. From this judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was John McAuliff who testified that he was employed as Chief Chemist for the Oklahoma State Bureau of Investigation, and further that he had occasion to examine and perform chemical tests on a substance on a blotter paper which had allegedly been given to one Steven Deems by the defendant. As a result of the tests performed on the blotter paper, he concluded the substance contained lysergic acid diethylamide (LSD).

Regarding the events surrounding the alleged tranfer of the LSD by the defendant to Steven Deems, the State sought to introduce the testimony of one Bianca Sue Keesee who had previously testified at the preliminary hearing and who failed to appear at trial. Defendant objected, which objection was overruled after a hearing outside the presence of the jury. The testimony was essentially as follows: Ms. Keesee had lived in Arkansas City, Kansas, since approximately February, and prior to that time had lived in Bartlesville, Okla-

homa. She said she was a janitor at the junior high school, was 26 years of age and further that on the 23rd day of June, 1974, she saw the defendant at another person's home in Newkirk, Oklahoma, Ken Bellmard's house. She testified that she had made arrangements with law enforcement officials to purchase some LSD, specifically that she had made a deal to purchase 2,000 hits of LSD. She made a telephone call to Newkirk and during that conversation she was informed by Karl Kuykendall, from whom she was to buy the LSD, that he didn't have 2,000 hits at that time but that he did have 53 hits which he could sell. She testified that she told him she would call him later because she wanted the 2,000 hits and would have to talk to her partner about purchasing the 53 hits. She further stated that she had previously bought some LSD from one Kenny Bellmard and one Karl Kuykendall at Bellmard's house on Magnolia Street on the preceding Friday and Saturday, defendant being present during that time. She stated that she made a second telephone call on Sunday afternoon from the Sheriff's Office in Newkirk and that she talked with the defendant personally. She had talked to him previously over the phone, had met him in June, had seen him on numerous occasions at her home, defendant having baby sat for her and, therefore, recognized his voice. She was told by the defendant that Karl and Kenny were not there but he would sell the 53 hits to her. After calling, she waited at the Sheriff's Office for Steve Deems, a detective with the Wichita Sheriff's Department. She related that upon Deems' arrival they proceeded in an undercover car to the Bellmard house with her purpose being to go in, purchase the LSD and then come back out. She stated that upon arrival, she walked up to the door, went inside and met the defendant while Deems waited outside in the car. She said the defendant did not want to sell to Steve Deems because he did not know him and was scared of him, but that he would sell to her. She further related how the de-

fendant retrieved a baggie out of a pan in a room away from the front room and she said that the baggie was laying on a "buffet type deal." She said she received a plastic baggie with a pink paper with big blots on it, and that after the defendant gave her the baggie they proceeded outside to the car where she gave the baggie to Deems who in turn gave her five $20.00 bills to give to the defendant, which she did. She stated that the purchase price was to be $90.00, but all they had were twenties and no one had change. Also when she walked outside to the car a man by the name of Tate walked out with them. She testified that the defendant put the money in his pocket and thereafter she got into the car with Deems, drove away from the house and Deems radioed other officers to move in. When the officers approached the house she saw the defendant run from the house with the officers in pursuit.

On cross-examination she testified that in her telephone conversation with defendant it was agreed that since Karl, the person with whom she had made the original agreement to buy LSD, was not there the defendant would sell it to her. She said that the actual delivery was made in a hallway inside the house.

The State's next witness was Steven Deems who said that on the day in question he was employed with the Sedgwick County Sheriff's Department and that primarily he was assigned to the narcotics unit. He said that prior to that time he had been employed with the Kansas State Attorney General's Office and other various law enforcement agencies. On the 23rd day of June, 1974, he was working on a narcotics case and he went with Bianca Sue Keesee to a house on Magnolia Street in Newkirk, Oklahoma. Upon arrival he noticed a blue Volkswagen in the driveway with out-of-state tags on it and also another car which had Kay County tags. He described the house and the position of the front door and further related that Ms. Keesee left the car and walked to the front

door which was not more than 30 or 40 feet away from him. The defendant answered the door and after a brief conversation she returned to the automobile and told him that the defendant had "dope." Deems instructed Ms. Keesee to tell the defendant he would not make any purchase until he saw the product. While she was at the front door defendant handed her what appeared to be a baggie, and she then returned to the car with it. Deems testified he examined the contents and observed that it contained several pieces of lavender paper with moisture spots on each one of them. He then gave Ms. Keesee five $20.00 bills which she gave the defendant. He stated there was a conversation between Deems and the defendant regarding a discrepancy in the change. Thereafter, Deems and Ms. Keesee drove away, Deems radioed the other officers to move in, and the defendant was arrested. He testified as to the chain of custody regarding the baggie he had received.

The defendant testified in his own behalf and stated that he had become acquainted with the Bellmard family, having been Lou Bellmard's roommate at Southeastern State College in Durant. During the summer he visited Bellmard at his home on Magnolia Street in Newkirk, he became acquainted with Ms. Keesee. He testified that at no time had he transferred any LSD to Ms. Keesee, but that Ms. Keesee had come to the Bellmard home on the day in question, had come into the house and walked around for awhile. He stated he became nervous about the way things were going and ran out the back door, whereafter he was apprehended by the police. He then stated that he had been previously convicted of possession of marihuana in Arkansas City.

Defendant first urges the trial court committed reversible error when it permitted the State to read into evidence the preliminary hearing transcript of the testimony given by the State's witness Bianca Sue Keesee, after she failed to appear at trial.

The Sixth Amendment of the United States Constitution provides in part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; . . ."

In *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965), the Supreme Court held:

"[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment."

In *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965), the Court stated:

"[O]ur cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation. . . ."

The Court, citing *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1894), went on to say:

" 'The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness . . .' " (380 U.S. 415 at 418, 85 S.Ct. 1074, at 1076, 13 L.Ed.2d 934)

In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court reversed defendant Barber's conviction because his right of confrontation had been infringed upon as a result of the State's introduction of a transcript of witness Woods' testimony given at the preliminary hearing after the witness failed to appear at trial, being absent from the state in a federal prison in Texas. Construing *Barber,* this Court in *In re Bishop,* Okl.Cr., 443 P.2d 768 (1968), found the crux of the *Barber* decision to:

"[L]ie in the recognized fact that the State made no showing that any effort whatsoever was made to return the witness from the federal penitentiary to tes-

tify; and the Court recites the existing provisions which permit the return of a federal prisoner to testify in a State trial upon a proper request being made. Instead, however, it appears that the State merely relied on the fact that the witness was outside the jurisdiction of the trial court, in the custody of federal authorities, and hence unavailable to testify. . . ."

This Court went on to find that the *Barber* decision did not preclude the use of such preliminary hearing testimony in proper circumstances and that such may be introduced if the State shows that a diligent effort has been made to locate the missing witness, and that he is actually unavailable. Further quoting *Newton v. State,* Okl.Cr., 403 P.2d 913 (1965), this Court said that the introduction of the previous testimony is at the discretion of the trial judge but that the exercise of such discretion is limited by certain limitations including: that the testimony was taken down by a reporter in the presence of the defendant and his counsel, who cross-examined him; that the testimony was filed with the clerk; that a proper predicate is laid for the introduction of such testimony, by showing the exercise of due diligence in attempting to locate the missing witness; and, that *due diligence has been exercised in an effort to produce the witness,* by timely issuance and service of subpoena. In the absence of such showing, the transcript of previous testimony should be denied by the trial court. (443 P.2d 768 at 772-773) Also see, *Whitehead v. State,* Okl.Cr., 526 P.2d 959 (1974); *Disheroon v. State,* Okl.Cr., 518 P.2d 892 (1974); *Rose v. State,* Okl. Cr., 509 P.2d 1368 (1973); *Farrar v. State,* Okl.Cr., 505 P.2d 1355 (1973); *Holmes v.*

*State,* Okl.Cr., 501 P.2d 830 (1972); *Roberson v. State,* Okl.Cr., 483 P.2d 353 (1971); *Fletcher v. State,* Okl.Cr., 364 P. 2d 713 (1961); *Morrison v. State,* 59 Okl. Cr. 245, 57 P.2d 882 (1936). Compare, *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and *Dutton v. Evans;* 400 U.S. 74, at 85, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

■ Essentially the above mentioned cases have delineated the minimal constitutional standard to be met in order that confrontation may be dispensed with as in the instant case where the informant Keesee's testimony at the preliminary hearing was introduced at trial, thereby eliminating the defendant's right to confrontation at trial and preventing the trier of fact the opportunity to assess the demeanor of the witness. Thus, the prosecution in seeking to introduce the preliminary hearing transcript must sufficiently prove: (1) The actual unavailability of the witness despite good faith and due diligent efforts to secure the presence of the witness at trial; and, (2) the transcript of the witness' testimony bears sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony. See, *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), and *Dutton v. Evans,* supra, *California v. Green,* supra, *Barber v. Page,* supra, and *In Re Bishop,* supra.

In light of the aforementioned constitutional standard, we first turn to the State's showing, or predicate laid, to establish the actual unavailability of witness Keesee. The State argues that the return of the out-of-county subpoena [1] showing personal service on the witness prior to the trial

---

1. Title 22 O.S.1971, § 715, provides:
   "No person is obliged to attend as a witness, before a court or magistrate out of the county where the witness resides or is served with the subpoena, unless the judge of the court in which the offense is triable, upon an affidavit of the county attorney, or of the defendant or his counsel, stating that he believed that the evidence of the

   witness is material and his attendance at the examination or trial necessary, shall indorse on the subpoena an order for the attendance of the witness."
   Defendant also argues that the out-of-county subpoena was defective in that it was not accompanied by any affidavit by the County Attorney, which is supported by the record.

coupled with the fact that the witness honored a similar subpoena in appearing at the preliminary hearing, constitutes an adequate showing of a good faith effort to secure the presence of the witness at trial.

The defendant argues that the State's failure to comply with the Uniform Act is less than a good faith effort, citing *Barber v. Page,* supra.

We note that the State stipulated that the Uniform Act [2] was not followed and further that the literal requirement of 22 O.S.1971, § 715, supra, were not met. The complained of testimony cannot, in our opinion be considered merely cumulative and non-prejudicial. Certainly, the informant Keesee's detailed testimony regarding the events preceding the alleged LSD transaction and the detailed testimony was most damaging because it was direct testimony of the delivery of the LSD which was allegedly made between defendant and Keesee, and in no one else's presence. We further note that the testimony of Officer Deems conflicts with that of the testimony of informant Keesee and the defendant's testimony. Thus, we cannot dispose of the issue of confrontation so lightly as to say it was merely cumulative. See, *Moore v. State,* Okl.Cr., 507 P.2d 1290 (1973) and *Casteel,* Okl.Cr., F–73–139 (not published).

The State admitted prior to the introduction of the testimony in question that informant Keesee's whereabouts was known. Therefore, the limited question in this case is whether or not the State's issuance of the out-of-county subpoena for a witness known to be out of state at a place certain constitutes a good faith and due diligent effort to obtain that witness' presence at trial (see, *Barber v. Page,* supra, and *In re Bishop,* supra) and whether or not

the actual unavailability of the witness was established. If answered in the affirmative, then the testimony sought to be introduced must also bear the sufficient indicia of reliability before the trier of fact makes satisfactory basis for evaluation of the truth of the statements. See, *California v. Green,* supra, and *Mancusi v. Stubbs,* supra.

The record of the instant case fails to reflect any efforts of the State to persuade witness Keesee to return to Oklahoma other than the service of a defective subpoena. The State did not attempt to obtain her presence under the Uniform Act. We note, further, that the record reflects that an out-of-county subpoena dated November 13 was issued and then served out-of-state upon witness Keesee on the 16th of November, commanding her appearance on the 25th of November in the District Court, Kay County. The record further reflects that a second similar subpoena dated February 5 was issued and thereafter served out-of-state upon witness Keesee on the 11th day of February, 1975, commanding her appearance on the 13th of February. The State offers no details as to whether or not witness Keesee appeared on the 25th of November, or any evidence whether or not the State conversed personally with the witness and possibly received an affirmative assurance of her presence at trial. We also take notice that the distance between the forum of this cause and the location of the witness was approximately 15 to 20 miles.

Under the circumstances of this case, the State's failure to make use of the Uniform Act falls below the required constitutional good faith effort to secure the presence of witness Keesee at trial.[3]

2. Title 22 O.S.Supp.1975, § 721, et seq., provides the procedure in this State to secure the attendance of a witness from outside the state and, in substance, is the same Uniform Act adopted by 47 of the other states.

3. Other cases indicate the State must demonstrate that all available means have been exhausted to bring the witness before the court, especially when the whereabouts of a material witness is known. See, *Gorum v. Craven,* 465 F.2d 443, at 445 (9th Cir. 1972); and *People v. Graham,* 69 Misc.2d 567, 330 N.Y.S.2d 717 (1973), construing *Barber v. Page,* supra, 390 U.S., at 719, 88 S.Ct. 1318 (case later affirmed by the Supreme Court,

We are therefore of the opinion that the State, in the instant case, failed in its burden of proof and the actual unavailability of witness Keesee was not established, nor does the State's action in the instant case constitute a good faith diligent effort. Thus the right of confrontation may not be dispensed with so lightly. See, *Barber v. Page,* supra, 390 U.S. at 724, 88 S.Ct. 1318.

For all the above and foregoing reasons, the instant case is *reversed and remanded* for further proceedings not inconsistent with this opinion.

BRETT, P. J., and BUSSEY, J., concur.

Appellate Division of New York in 43 A.D.2d 182, 350 N.Y.S.2d 458 [1973]). Also see, *People v. Nieto,* 33 Mich.App. 535, 190 N.W.2d 579, at 581 (1971); and *People v. McIntosh,* 389 Mich. 82, 204 N.W.2d 135, at 138 (1973), in a dissenting opinion by Justice Brennan; and see, *Kasieta v. State,* 62 Wis.2d 564, 215 N.W.2d 412 (1974). Also, *California v. Green,* supra, indicates that even if the previous witness had died or were otherwise unavailable the prior confrontation was sufficient as long as the declarant's inability to give live testimony was *in no way the fault of the state,* 399 U.S. 149 at 165, 90 S.Ct. 1930, 26 L.Ed.2d 489.