**Fred Arnold DILWORTH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–876.**

Court of Criminal Appeals of Oklahoma.

May 13, 1980.

Mark A. Ashton, Ashton, Ashton, Wisener & Munkacsy, Inc., Lawton, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Clifford E. Briery, II, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

This is an appeal from a conviction in the District Court of Comanche County, Case No. CRF–76–1093, for Pointing a Firearm. Punishment was set at five (5) years' imprisonment.

The conviction arose out of an incident on December 27, 1976, in Lawton, Oklahoma, when a pickup truck of an off-duty highway patrolman was blocked by two cars. The occupants of both cars were engaged in a conversation with their vehicles facing in opposite directions.

The testimony is conflicting as to what was said after the patrolman, Fred Whitehead, pulled up behind the appellant's car, but it is clear that the appellant was asked to move his car out of the street. The patrolman testified the appellant left his car, walked back to the patrolman's truck, pointed a weapon in his face and said, "What did you say, you mother fucker?" and, "Now, go around." The appellant claims he did not point the gun at the highway patrolman but was merely holding it in his hand. He said his statement to the officer was, "Sir, who are you hollering at?"

Following the incident, the appellant attempted to drive away but accidentally ran over his girl friend's foot as she stood next to his car. Both the appellant and the patrolman stopped to assist the lady, who was taken to the hospital. At that time, the appellant explained he was having some "family problems." The parties left the scene after the patrolman remarked to the appellant that he would be seeing him again. The appellant returned to work at Reynolds Army Hospital at Ft. Sill, where he was stationed. Later that day the appellant was arrested at Ft. Sill, after Patrolman Whitehead obtained an arrest warrant.

## I

The appellant's strongest argument for reversal is his final proposition of error and it will therefore be considered first. The issue is whether the State's issuance of out-of-county subpoenas for two witnesses known to be in Korea constitutes a good faith and due diligent effort to obtain those witnesses' presence at trial and whether or not the actual unavailability of the two witnesses was established.

PFC Steve Selchow, to whom the appellant delivered the subject pistol upon his return to Ft. Sill, and Sergeant Michael Rees, who was next in the chain of custody of the pistol, were both transferred to Korea shortly after testifying at the preliminary hearing. Both witnesses advised the trial court at the preliminary hearing of their expected date of transfer to Korea. The State issued subpoenas for the two witnesses ten days before trial at their last known addresses at Ft. Sill, Oklahoma. The subpoenas were returned unserved.

The appellant contends that the failure of the State either to produce the witnesses at trial or to show their unavailability denied him his Sixth Amendment right to confront the witnesses against him. The State contends that serving the subpoenas at the last known address was sufficient effort to obtain the witnesses and that the State met its burden of showing their unavailability, so as to allow the introduction of the preliminary hearing transcript of the testimony of the two witnesses.

■ We have recognized that the State bears the burden of proving by a good faith effort that the witnesses were truly unavailable. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *In re Bishop*, Okl.Cr., 443 P.2d 768 (1968). The controlling case on the issues before us is *Smith v. State*, Okl.Cr., 546 P.2d 267, 271 (1976), which held:

"[T]he prosecution in seeking to introduce the preliminary hearing transcript must sufficiently prove: (1) The actual unavailability of the witness despite good faith and due diligent efforts to secure

the presence of the witness at trial; and, (2) the transcript of the witness' testimony bears sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony. . . ." (Citations omitted)

And "due diligence implies more than partial notice, and last-minute activities." *Newton v. State*, Okl.Cr., 403 P.2d 913 (1965). The testimony must have been taken down by a court reporter in the presence of the appellant and the defense counsel must have had an opportunity to cross-examine the witness. *Bellmard v. State*, Okl. Cr., 547 P.2d 388 (1976); *Lamb v. State*, Okl.Cr., 560 P.2d 583 (1977).

This Court recognized with apparent approval in *Smith v. State*, supra, (see n. 3) cases from other jurisdictions indicating the State must demonstrate that all available means have been exhausted to bring the witness before the court, especially when the whereabouts of a material witness is known.

■ Because admissibility of prior transcripts is within the discretion of the trial court, subject to the aforementioned limitations, our inquiry on appeal is limited to whether or not the trial court abused its discretion in this regard. See *State v. Gates*, Okl.Cr., 576 P.2d 313 (1978), and *Smith v. State*, supra.

■ At preliminary hearing a complete adversary proceeding was conducted as to these witnesses' testimony. Full cross-examination of both witnesses was conducted by the same defense counsel who handled the appellant's trial. The two unavailable witnesses were not present during the incident but only testified as to the chain of custody of the gun and the arrest of the appellant. Since the appellant admitted carrying the pistol, this was not a material part of the State's case in chief. We therefore conclude that the manner in which the evidence was presented did not deprive the appellant of his right to be confronted by his accusers. We find no abuse of discretion by the trial court.

Not every error of constitutional magnitude requires reversal of a conviction. There are some constitutional errors which are so unimportant and insignificant that they may be deemed to be harmless, and we so find here. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## II

■ The appellant next argues that the trial court erred in failing to instruct the jury on the statutory definition of a pistol, contained in 21 O.S.1971, § 1289.3. A careful reading of the transcript fails to reveal that the question was at issue. As stated in *Kidd v. State*, 76 Okl.Cr. 213, 136 P.2d 210, 218 (1943), "The instructions of the court should only cover the issues which are presented by the evidence." If there is no evidence in the record to warrant an instruction, it should not be given. *Carlile v. State*, Okl.Cr., 493 P.2d 449 (1972); *McBirney v. City of Tulsa*, 505 P.2d 1403 (1973). No testimony was presented at trial that even implied that the instrument involved was not a pistol.

## III

We must now consider whether the trial court properly overruled the appellant's demurrer to the State's evidence. The appellant contends the State failed to sustain its burden of proof because it failed to prove that the instrument alleged to be a pistol was capable of firing a projectile; and that the pistol introduced into evidence was the same one used in committing the crime.

■ At trial, the State did attempt to show that the pistol introduced into evidence was capable of firing a projectile. The following exchange occurred at trial, with patrolman Whitehead testifying for the prosecution on direct examination:

"Q. And when did you again see the gun?

"A. The date of the preliminary hearing.

"Q. And where did you see the gun at that time?

"A. Then Assistant District Attorney Stephen Lile——

"MR. CRANE: That's incompetent, irrelevant and immaterial, Your Honor. Object to it.

"MR. HACKLER: Your Honor, I believe we will show its relevance in that it was test fired at that time.

"MR. CRANE: That's incompetent, irrelevant and immaterial whether it shoots or not.

"THE COURT: Sustained."

This Court cannot allow the defense to now object to the State's failure to introduce such evidence when the defense precluded the State from doing so. The situation is somewhat analogous to that in *Wingfield v. State,* 89 Okl.Cr. 45, 205 P.2d 320, 331 (1949). In that case, the defense attempted to raise a contention on appeal which was not raised at trial when the original objection was made. The Court stated:

"[I]t appears that counsel for the defendant were 'laying behind a log' which practice we do not approve. It takes unfair advantage of the trial court and the State. It is an attempt to create a point by technical silence which if urged [at trial] would be obviated and the technicality destroyed. Such conduct is similar to complaining about the court's failure to instruct on a certain feature of a case, without at the time of trial suggesting the necessity of such an instruction. This court has often said it will not permit that kind of contention to prevail. . . We do not feel constrained to make of criminal procedure a game, where the trial court must match wits with the lawyers in an effort to ascertain hidden purposes, which they may not choose to disclose, in order to gain future advantage. . . ."

■ The State did establish a chain of possession for the weapon. Upon returning to Ft. Sill, the appellant gave the pistol to his superior, PFC Selchow, and from that point on the chain of possession was unbroken. The only question that arises is whether the weapon turned over to PFC Selchow was reasonably certain to be the same weapon used in the incident. Because the weapon remained in the appellant's possession after the encounter with patrolman Whitehead, the patrolman could not positively identify it at trial. Whitehead did identify the weapon as being similar. We think the chain of possession was substantially established, and the proof was adequate to sustain the foundation for admissibility of the weapon. See *Faulkenberry v. State,* Okl.Cr., 551 P.2d 271 (1976); *Trantham v. State,* Okl.Cr., 508 P.2d 1104 (1973).

The appellant insists that because the State did not positively prove the weapon used was the same one introduced into evidence, the State failed to prove the weapon was capable of firing a projectile at the time of the incident. We think the Legislature did not intend such a result and we know of no authority to that effect. Title 21 O.S.1971, § 1289.16, makes it a crime to point a pistol at another person, whether the pistol is loaded or not.

■ The material elements that the State has the burden of providing include (1) that the accused must point a pistol, and (2) that the proof must show an intentional pointing of the weapon. See *Parker v. State,* Okl.Cr., 273 P.2d 778 (1954); *Wilson v. State,* 89 Okl.Cr. 421, 209 P.2d 512 (1949); adhered to on rehearing 89 Okl.Cr. 421, 212 P.2d 144; *Buchanan v. State,* 25 Okl.Cr. 198, 219 P. 420 (1923), all construing the forerunner of the present statute for pointing a weapon at another person. These elements having been proved, the demurrer was properly overruled.

### IV

Did the trial court err in allowing improper cross-examination of the appellant's girl friend and of the appellant. The cross-examination of the appellant's girl friend was as follows:

"Q. How long did you say you had been living with this Mr. Dilworth?

"A. I have been living with him for—well, I have known him for a year and a half.

"Q. O.K. Where was his wife living at that time?

"A. San Antonio."

On recross, the following exchange took place: (Tr. 92–93)

"Q. Are you still seeing Mr. Dilworth socially?

"A. Yes, sir.

"Q. Are you still having sexual intercourse with Mr. Dilworth?

"MR. CRANE: Let me object to that. It's incompetent, irrelevant and immaterial to this case, Your Honor.

"THE COURT: Overruled.

"Q. Are you still having sexual intercourse with Mr. Dilworth here?

"A. Yes, I am."

Thereafter, in cross-examination of the appellant, the State inquired as to which family the appellant was having a dispute with on the day of the incident, his wife or his mistress. The defense made no objection at trial.

The appellant contends that because previous testimony had revealed that the appellant had been living with the witness at the time of the incident it was error to allow the State to ask the witness if she was still having sexual intercourse with the appellant at the time of trial. It is well settled that anything which tends to show bias or prejudice on the part of a witness is commonly proper for the jury to consider in determining the weight or credibility to be given a witness' testimony. *Wells v. State*, Okl.Cr., 559 P.2d 445 (1977). This principle has been set forth in other cases involving inquiry into the relationship between a defendant and a witness of the opposite sex. See *Robedeaux v. State*, 94 Okl.Cr. 171, 232 P.2d 642 (1951); *Starks v. State*, 67 Okl.Cr. 156, 93 P.2d 50 (1939). We hold that evidence of this type was relevant to show the bias of the witness in the appellant's favor.

The next issue is whether it was proper for the State to have asked questions pertaining to the appellant's marital status and with which family he was having a dispute. This is somewhat analogous to the situation in *Robedeaux v. State*, supra, where the Court said:

". . . We do not think, however, that the county attorney should have followed up the subject by questioning the defendant along this line, the relationship recited by witness Blanche Wilson being undisputed."

It must be pointed out, however, that the appellant raised no objection at trial to either question now complained of on appeal.

This Court stated in *Love v. State*, Okl. Cr., 360 P.2d 954, 958 (1960):

"Failure to object to incompetent questions has always created a difficult problem for this Court. Defense counsel must never be permitted to lay behind the log and hope for reversal upon the question to be considered. On the other hand a defendant is entitled to a fair and impartial trial in every sense of the word and in many instances an injustice would be perpetrated if by inadvertence on the part of defense counsel or the trial judge, defendant was convicted as a result of incompetent and prejudicial testimony without objection. . . . However, the general rule favors objection being made and exceptions saved in order to have the matter considered on appeal. . . ."

We do not believe the prejudicial effect of this questioning was to deny the appellant a fair and impartial trial so as to require reversal.

### V

The last question raised concerns the excessiveness of the five year sentence. Under 21 O.S.1971, § 1289.17, punishment for pointing a firearm is not less than one (1) year nor more than ten (10) years. Hence, the penalty imposed is well within the limits prescribed by law.

This Court has repeatedly held that the question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case. We do not have the power to modify a sentence unless we can conscientiously say under all the facts and circumstances the sentence is so excessive as

to shock the conscience of the Court. *Failes v. State*, Okl.Cr., 589 P.2d 1080 (1979).

The judgment and sentence is AFFIRMED.

BRETT and BUSSEY, JJ., concur.