James Leslie DAVIS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–29.

Court of Criminal Appeals of Oklahoma.

April 6, 1988.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

James Leslie Davis, appellant, was tried by jury and convicted of two counts of Robbery With Firearms [21 O.S.Supp.1982, § 801], First Degree Rape [21 O.S.Supp. 1983, § 1114], Forcible Sodomy [21 O.S. Supp.1982, § 888], and two counts of Unauthorized Use of a Motor Vehicle [47 O.S. 1981, § 4-102], in Case No. CRF-83-529, in the District Court of Muskogee County, the Honorable James E. Edmondson, District Judge, presiding. The jury set punishment at imprisonment for twenty-five (25) years for each count of Robbery with Firearms, fifty (50) years for First Degree Rape, twenty (20) years for Forcible Sodomy, and five (5) years for each count of Unauthorized Use of a Motor Vehicle. Judgments and sentences were imposed in accordance with the jury's verdict, the sentences to run consecutively. We affirm.

This appeal arises from a two day crime spree which occurred on August 31 and September 7, 1983, in Muskogee, Oklahoma. During the early morning hours of August 31, appellant and an accomplice, Jerry Lynn Clemons, knocked on the front door of Mr. and Mrs. R.'s house and appellant asked if they could use the telephone. The appellant opened the screen door, pulled a gun, and announced "this is a stickup". Appellant threatened to kill both Mr. and Mrs. R. if they did not cooperate. Clemons, who was masked, followed appellant into the living room and escorted Mr. R. to the rear of the house, where he locked Mr. R. into a bathroom. The appellant held a gun to Mrs. R.'s head, forced her to remove her lower garments, and began raping her. When Clemons returned to the living room, appellant forced Mrs. R. to put her hands on the arm of the couch and perform fellatio on Clemons while the appellant continued to rape her. Appellant and Clemons then changed positions and repeated the acts. As the appellant led Mrs. R. to the back bedroom, she broke away and locked herself into the second bathroom. The appellant ripped the phone out of the wall, took cash from Mr. R.'s wallet and the keys to the family car,

and fled. The car was later found abandoned near the railroad tracks. The police were unable to lift any latent prints from the abandoned car.

During the early morning hours of September 7, 1983, the appellant held up a convenience store. Clemons waited outside because he knew the clerk, Robert Julian. Appellant asked the clerk for a pack of cigarettes, pulled a gun, and robbed the clerk. Appellant then forced Mr. Julian to carry the money out of the store, where Clemons met them. Clemons said, "Don't look at me. Make him turn his head. Don't let him see me." The appellant took Mr. Julian's car keys and locked the clerk in the bathroom. Appellant and Clemons then fled in Julian's car. Julian broke out of the bathroom, called the police, and gave them a description of his car. A short time later, the police spotted Julian's car and gave chase. The appellant tried to evade the police, lost control of the car, and crashed into a ditch. Appellant and Clemons fled on foot, leaving the cash from the robbery in the front seat. The police found appellant's latent palm print on the driver's door of Julian's car.

Jerry Lynn Clemons pled guilty to two charges of armed robbery and testified for the State at appellant's trial. Neither Mr. R. nor Robert Julian was available to testify at trial and their preliminary hearing testimony, including cross-examination by appellant's counsel, was read to the jury.

For his first assignment of error, the appellant asserts that the trial court erred by admitting the preliminary hearing testimony of Mr. R. and of Robert Julian because the State failed to satisfy its burden of proving unavailability of the witnesses despite a good faith and due diligence effort.

Appellant relies primarily on *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed. 2d 255 (1968), in which the Supreme Court found that the confrontation clause requires the State to make a good faith effort to obtain the presence of a witness at trial before his preliminary hearing testimony may be used. The State argues that admission of the preliminary hearing testimo-

ny is discretionary with the trial court, citing *Dilworth v. State*, 611 P.2d 256, 259 (Okl.Crim.App.1980). We disagree.

■ The State has the burden of satisfying two threshold requirements before admission of preliminary hearing testimony comes within the trial court's discretion:

> [T]he prosecution in seeking to introduce the preliminary hearing transcript must sufficiently prove: (1) the actual unavailability of the witness despite good faith and due diligent efforts to secure the presence of the witness at trial; and, (2) the transcript of the witness' testimony bears sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony.

*Smith v. State*, 546 P.2d 267, 271 (Okla. Crim.App.1976). Once these two threshold requirements are met by the State, introduction of the former testimony is discretionary with the trial court, *id.*, and our inquiry on appeal is limited to whether the trial court abused its discretion by admitting the preliminary hearing testimony. *Dilworth, supra*, at 259.

■ Mr. R. was subpoenaed to testify at trial but failed to appear. Mrs. R., in an *in camera* hearing, testified that Mr. R. was suffering from terminal cancer, had recently been hospitalized for eleven days, and was presently at home. Mrs. R. further testified that Mr. R. was presently bedridden and under the care of a nurse, could only sit up for one to two minutes at a time, and was too weak to travel. Appellant thoroughly cross-examined Mrs. R. concerning the reason for Mr. R.'s unavailability. The trial court expressly found Mr. R. unavailable to testify because of physical illness or infirmity, the State proved actual unavailability of the witness despite a good faith and due diligence effort, and the preliminary hearing transcript of Mr. R.'s testimony at the preliminary hearing bore sufficient indicia of reliability to submit the testimony to the jury. *See* 12 O.S.1981, §§ 2804(A)(4), (B)(1). We agree that the State satisfied its burden of proof that the witness was unavailable despite a good faith and due diligence effort; there-

fore, admission of the preliminary hearing testimony was within the sound discretion of the trial court. We find no abuse of discretion.

Mr. Julian moved to Massachusetts prior to trial but notified the State that he could be reached at his sister's home and was willing to return to testify. The witness subsequently moved from his sister's home into an apartment. The prosecutor and members of his staff talked to Mr. Julian in Massachusetts on at least three occasions. Each time the witness confirmed he would voluntarily return to Oklahoma and testify. The State prepaid Mr. Julian's airline tickets, arranged for a rental car at State expense for the trip between Tulsa and Muskogee, and made advance motel reservations for the witness in Muskogee. All expenses were prepaid by the State. These arrangements were conveyed to Mr. Julian two days before trial, at which time he again assured the prosecutor that he would return and testify. Arrangements were made for the prosecutor to meet Mr. Julian at his motel room the night before the trial. When the prosecutor arrived at the motel, Mr. Julian had not appeared. The prosecutor called his office to determine whether they had heard from the witness. Finding they had not, the prosecutor called Mr. Julian's roommate. The roommate said he did not know where Mr. Julian could be found. The prosecutor then called Mr. Julian's sister, who said she knew where Julian was but would not reveal his location.

■ The law does not impose on the State an absolute duty to secure the attendance of a witness at trial before the preliminary hearing testimony of that witness may be revealed to the jury. *Barber, supra*, and *Smith, supra*, hold the State to a standard of good faith and due diligence in securing the attendance of a witness. Appellant relies on this writer's dissent in *Rogers v. State*, 721 P.2d 820, 826 (Okla. Crim.App.1986). However, unlike *Rogers*, where the witness was stranded enroute because of a breakdown in travel arrangements made by the State, which delay could have been cured by a continuance, in the instant case the witness deliberately, at

the last minute, made himself unavailable. The witness' sister knew his location but would not reveal it to the prosecutor. Thus, no act by the State prevented the witness from testifying at trial. *See* 12 O.S.1981, § 2804(A)(5).

Appellant further argues that the State's failure to subpoena Julian is evidence of a lack of good faith and due diligence. We disagree. Title 12 O.S.1981, § 2804(A)(5), requires the State to procure the attendance of a witness "by process or other reasonable means". Although in retrospect it would have been better practice for the State to subpoena Mr. Julian, and in the future we would expect the State to exercise this means of securing the attendance of a witness, under the facts and circumstances of this particular case, we find that the witness' repeated assurances that he would voluntarily return and testify satisfies the "other reasonable means" test. The prosecutor's reliance on the witness' assurances may have been misplaced, but such misplaced reliance does not, *ipso facto*, convert the State's efforts to secure the attendance of the witness into evidence of a lack of good faith and due diligence. The trial court found the State exercised good faith and due diligence in attempting to secure the presence of the witness and the preliminary hearing transcript bore sufficient indicia of reliability to read to the jury. After carefully reviewing the record, we cannot say the trial court erred in holding that the State met the two threshold requirements of *Smith, supra.* Therefore, the standard we apply is whether the trial court abused its discretion in allowing the State to read Mr. Julian's preliminary hearing testimony to the jury. We find no abuse of discretion. This assignment of error is without merit.

■■■ For his second assignment of error, the appellant asserts he was denied a fair trial because of improper comments made by the prosecutor. We observe initially that the appellant failed to object to any of the comments he now challenges as error. Failure to object to the allegedly erroneous remarks waives all but fundamental error, because the appellant failed to bring the error to the attention of the trial court and provide it with an opportunity to correct the error at trial. *Beshears v. State*, 738 P.2d 1375, 1378 (Okla.Crim.App. 1987). Additionally, many of the prosecutor's remarks now complained of were invited by the appellant and, having invited the response, appellant cannot now complain because the prosecutor rose to the bait. *Harvell v. State*, 742 P.2d 1138, 1142 (Okla.Crim.App.1987). After reviewing the remarks complained of, we find no fundamental error. This assignment of error is without merit.

■■■ For his third assignment of error, the appellant asserts he was denied a fair trial because the trial court failed to give a cautionary instruction on eyewitness identification, relying on *McDoulett v. State*, 685 P.2d 978 (Okla.Crim.App.1984). We again observe that appellant failed to request a cautionary instruction on eyewitness identification, thereby waiving all but fundamental error. *Hair v. State*, 597 P.2d 347, 349 (Okla.Crim.App.1979). Moreover, a cautionary instruction is required only when eyewitness identification is a critical element of the prosecutor's case and serious questions exist concerning the reliability of that identification. *McDoulett, supra,* at 980. The appellant argues that because Mrs. R. picked out the wrong person at a police lineup, the cautionary instruction on eyewitness identification should have been given *sua sponte.* On this record, we must disagree. Mrs. R. picked the appellant out of a photographic lineup. The misidentification at the physical lineup concerned Mr. Clemons, not the appellant. Mrs. R. made a positive in court identification of the appellant. No serious questions existed concerning the reliability of Mrs. R.'s identification of the appellant, only of her identification of Mr. Clemons. And Mr. Clemons testified at trial that he participated in the robbery of Mr. and Mrs. R., thereby curing Mrs. R.'s earlier misidentification of Clemons. We find no fundamental error. This assignment of error is without merit.

■■■ For his final assignment of error, the appellant argues that his sentence should be modified in the interests of jus-

tice by changing the sentences to run concurrently rather than consecutively. The facts and circumstances of this case reveal the evidence amply supports the jury's verdict; the record is free from error which would justify a modification or reversal; and the punishment imposed is within the range provided by statute. *Fincher v. State*, 711 P.2d 940, 942–43 (Okla.Crim. App.1985). It does not shock the conscience of the Court that the sentences were imposed to run consecutively, and we consequently find no abuse of discretion. *See Glass v. State*, 701 P.2d 765, 770 (Okla. Crim.App.1985). This assignment of error is without merit.

Accordingly, for the foregoing reasons, the judgments and sentences should be, and hereby are, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.