Clarence SCOTT, Appellant,

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–320.**

Court of Criminal Appeals of Oklahoma.

March 5, 1991.

As Corrected March 27, 1991.

Robert Nigh, Jr., Asst. Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Clarence Scott, Appellant, was tried by jury for the crime of Possession of a Controlled Dangerous Substance with Intent to Distribute after Former Conviction of a Felony (63 O.S.1981, § 2–401(B)(2)) in Tulsa County District Court, Case No. CF–88–2348. The jury returned a verdict of guilty of the primary charge and not guilty of former conviction. The trial court sentenced appellant in accord with the jury's verdict to twenty-five (25) years imprisonment. The appellant raises five propositions of error; two regarding evidence, two regarding the jury instructions, and prosecutorial misconduct. The State concedes, and we find, that the jury was instructed incorrectly regarding the possible length of sentence. We affirm the judgment and remand this case to the trial court for resentencing pursuant to 22 O.S.Supp.1990, §§ 929 and 1066.

Sometime on June 7, 1988, a confidential informant bought PCP at an upstairs apartment in the Vernon Manor Apartment complex in North Tulsa and reported the buy to police. On the morning of June 8, 1988, several Tulsa Police Officers arrived at the apartment to serve a search warrant. Officer Whittingham went around to the back while others served the warrant at the front door. At about the same moment he heard the police announce their presence, he saw the appellant throw a Crown Royal bag out of a window of the apartment. The bag landed about five (5) feet from him. He retrieved the bag and discovered that it contained four (4) vials containing phencyclidine (PCP), several empty vials, and a bottle of food coloring in a brown pouch. The vials contained approximately thirty-five (35) doses of PCP which had an estimated street value of $175.00. Officer Yelton who was one of the first officers to enter the apartment saw the appellant in the kitchen at the back of the apartment when he entered. He also seized a bag in plain view on the living room sofa which contained twenty-eight (28) vials of PCP.

The appellant argues that the evidence did not prove his intent to distribute and was therefore insufficient to sustain his conviction. To support this position he first argues that the bag of twenty-eight (28) vials of PCP which was admitted into evidence was not shown to be in his possession. Appellant also attacks the credibility of Officer Whittington who stated he only got a "glimpse" of the appellant tossing out the Crown Royal bag. To bolster this credibility argument the appellant relies on the conflicting testimony of Officer Kurowski, who followed several seconds behind Officer Whittington, that a brown paper sack was thrown from the window.

██ Intent is a state of mind that will be proven, if at all, by circumstantial evidence. *See Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). Circumstantial evidence by its nature requires

the jury to use it to draw reasonable inferences. On appellate review this Court accepts all reasonable inferences which tend to support the jury's verdict *Williams v. State*, 721 P.2d 1318 (Okl.Cr.1986), and the evidence will be found to be sufficient if it excludes every reasonable hypothesis except that of guilt. *Riley v. State*, 760 P.2d 198 (Okl.Cr.1988).

The fact that the bag which the appellant threw from the window contained approximately thirty-five (35) doses of PCP with a street value of $175.00, as well as empty vials which are used in the trade for dipping cigarettes in single doses for sale supports the jury's finding of intent to distribute. The fact that Officer Whittington observed the appellant briefly, and that another officer testified that a brown paper bag was thrown from the window goes to the weight and credibility of Whittington's testimony. The task of resolving this conflict is not for the appellate court, but rather for the jury which is the exclusive judge of weight of the evidence and the credibility of the witnesses, *Raymond v. State*, 717 P.2d 1147 (Okl.Cr.1986). The jury in this case chose to believe Officer Whittington. The jury's finding of intent is supported by the record and will not be disturbed on appeal.

Appellant next argues that an evidentiary harpoon prevented him from receiving a fair trial. The alleged harpoon occurred after Officer Whittington testified that marijuana had been found in the apartment and the trial judge specifically admonished the State to "stick to PCP". Whittington then testified:

Q. So a total of eight hundred and seventy-five dollars worth of controlled drug at street value found inside this apartment?

A. Right.

Q. Okay.

A. In addition to the other—the marijuana. There was also marijuana.

This Court has clearly defined the six (6) characteristics of evidentiary harpoons:

(1) they are generally made by experienced police officers, (2) they are voluntary statements; (3) they are wilfully jabbed rather than inadvertent; (4) they inject information concerning other crimes; (5) they are calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial.

*Pierce v. State*, 786 P.2d 1255, 1260 (Okl. Cr.1990); *Bruner v. State*, 612 P.2d 1375, 1378 (Okl.Cr.1980). Given the fact that the trial court only moments before had cautioned the prosecutor to "stick to PCP", we have no doubt that Officer Whittington, an experienced officer who by his own admission had testified hundreds of times in trials of drug related offenses, intended to hurl an evidentiary harpoon.

Immediately after Officer Whittington attempted to hurl this defective harpoon, the trial court admonished the jury to disregard the testimony regarding marijuana.

The trial court's admonition to the jury will cure this error unless the evidence admitted is so prejudicial that common sense tells us the jury could not disregard it in reaching its verdict. *See Sullivan v. State*, 716 P.2d 684 (Okl.Cr.1986). The uncontroverted evidence established that the appellant threw a sack containing four vials containing thirty-five doses of PCP out the apartment window, and twenty-eight vials of PCP were recovered inside the apartment. This is strong, if not overwhelming evidence that the appellant possessed PCP with the intent to distribute it. Under these facts we do not find that the evidence that the appellant also possessed marijuana contributed to the jury's determination of guilt. Admonition by the trial court was sufficient in this case to cure this evidentiary error.

The appellant did not request a cautionary instruction on the eye-witness identification by Officer Whittington, but now claims that the trial court erred by not so instructing *sua sponte*. Appellant has waived all but fundamental error by his failure to request this instruction. *Davis v. State*, 753 P.2d 388, 392 (Okl.Cr.1988); *Hair v. State*, 597 P.2d 347, 349 (Okl.Cr. 1979).

■ A cautionary instruction is required only when eye-witness identification is a critical element of the prosecutor's case and serious questions exist concerning the reliability of the identification. *Davis* at 392, *McDoulett v. State*, 685 P.2d 978, 980 (Okl.Cr.1984). No serious question regarding reliability of the identification is raised where, as here, the witness had the opportunity to observe the subject clearly, was positive in the identification, remained positive and unqualified even after cross-examination, and did not fail previously to identify the subject. *See Batson v. State*, 724 P.2d 253 (Okl.Cr.1986). While the amount of time which an eye-witness observed a subject may effect the opportunity to observe clearly, a brief observation is not necessarily unclear. The record does not support the appellant's position that serious questions regarding the eyewitness identification by Officer Whittington existed. The trial court had no duty to give a cautionary instruction in this case.

Although no contemporaneous objections were lodged, the appellant now argues he was prejudiced by prosecutorial misconduct during closing argument. Therefore, we again review for fundamental error only. *Dangerfield v. State*, 742 P.2d 573 (Okl.Cr. 1987). None of the challenged comments are so grossly improper as to require reversal. We find no fundamental error.

■ The appellant argues, and the state agrees, that improper instruction on the range of punishment requires that his sentence be modified. Although defense counsel did not object to the improper instruction, improper statement of the applicable law is fundamental error which can not be waived and which may be corrected when raised for the first time on appeal. *See Ellis v. State*, 749 P.2d 114, 116 (Okl.Cr. 1988).

The jury should have been instructed under 63 O.S.Supp.1986, § 2–401(B)(2) that the possible sentence was not less than two (2) years nor more than twenty (20) years imprisonment. Instead the trial court instructed the jury that the possible punishment was five (5) years to life imprisonment. Evidently the judge based his instruction on 63 O.S.Supp.1986, § 2–401(B)(1), the punishment for possession of a narcotic or L.S.D. with the intent to distribute. The appellant argues his sentence must be modified to the statutory minimum.

■ In a non-capital case where the Court has determined that a sentence is infirm due to trial error it may exercise one of three options; modify within the range of punishment [1], modify to the minimum punishment allowable by law [2], or remand to the trial court for resentencing [3]. The strong statutory policy of the State of Oklahoma is that a criminal defendant be sentenced by jury. 22 O.S.1981, § 926. Therefore, when modifying a sentence, this Court has analyzed the apparent reasoning behind the jury assessment of punishment so that the resentencing does not do violence to it.

Where we have found prosecutorial misconduct inflamed the jury and the sentence shocks the conscience of the Court, we have reduced the sentence within the range of punishment to eliminate the part of the sentence which was apparently driven by improper prejudice. *See* fn. 1; *see also Jackson v. State*, 763 P.2d 388 (Okl.Cr. 1988); *Spees v. State*, 735 P.2d 571 (Okl.Cr. 1987); *Davis v. State*, 763 P.2d 109 (Okl.Cr. 1988), *cert. denied* 489 U.S. 1055, 109 S.Ct. 1319, 103 L.Ed.2d 588 (1989). Where the jury was improperly instructed on the range of punishment, we were left with little guidance as to what punishment the jury would have given had it been properly instructed, and opted for the minimum stat-

---

1. *See e.g. Scott v. State*, 751 P.2d 758 (Okl.Cr. 1988), *cert. denied* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1988) (prosecutorial misconduct); *Treece v. State*, 753 P.2d 377 (Okl.Cr. 1988) (prosecutorial misconduct); *Wade v. State*, 624 P.2d 86 (Okl.Cr.1981) (cumulative trial error).

2. *See e.g. Clopton v. State*, 742 P.2d 586 (Okl.Cr. 1987); *Ellis v. State*, 749 P.2d 114 (Okl.Cr.1988).

3. *See Nipps v. State*, 626 P.2d 1349 (Okl.Cr. 1981).

utory punishment. *See* fn. 2. Where the jury was improperly instructed regarding enhancement, we have modified sentence to the maximum unenhanced sentence. *See Mitchell v. State*, 781 P.2d 331 (Okl.Cr. 1989).

At the time these cases were decided there was some question as to whether the Court had the authority to remand a case to the district court for resentencing. *Compare Nipps v. State*, 626 P.2d 1349 (Okl.Cr.1981) (remand for resentencing when sentencing statute declared unconstitutional); *Dean v. State*, 778 P.2d 476 (Okl. Cr.1989) (no statutory authority to remand for resentencing). This question was recently resolved when the Oklahoma Legislature granted the Court clear statutory authority to remand a case to the district court for resentencing where necessary or proper. *See* 22 O.S.Supp.1990, §§ 929 and 1066.

■■■ In the present case we are unable to determine the reasoning which supports the jury's recommended sentence. The jury was improperly instructed on an open-ended range of punishment, five (5) years to life, and set punishment at twenty-five (25) years. This sentence is not the maximum possible under· the incorrect instruction, yet it is beyond the maximum allowable. Any attempt to compute an equivalent proper sentence mathematically is futile, or worse, lends an air of apparent certainty to mere speculation. Under the present circumstances we therefore find that it is both necessary and proper that we remand this matter to the trial court for resentencing.

BRETT and JOHNSON, JJ., concur.

PARKS, P.J., and LUMPKIN, V.P.J., concur in the result.

PARKS, Presiding Judge, concurs in result:

The allegation that the officer intended to hurl an evidentiary harpoon is simply not supported by the record. Notwithstanding the majority's absence of doubt, the record is hostile to the conclusion that the testimony amounted to an evidentiary harpoon. A careful review of the characteristics of an evidentiary harpoon reveals that each characteristic is interwoven with the other in such a way that any testimony that is relevant to the question asked cannot be labeled as an evidentiary harpoon. The record does not indicate that the testimony was totally unresponsive to the question asked, willfully jabbed or was calculated to prejudice the defendant. Rather, a close inspection of what transpired prior to the trial judge's admonition to "stick to PCP" and "stay away from any other crimes" (Tr. 35) reveals that the following occurred:

Q. (by the Prosecutor) Okay. Delineate, please, exactly what was found in regards to this case?

A. (by the police officer) I believe there was a total of thirty-two vials, which these are the vials containing the liquid that we considered to be PCP, the eye-dropper, which I have here in front of me, I believe there also was a pipe found in some of the other evidence, miscellaneous drug paraphernalia with some marijuana found in the residence also.

Mr. O'Carroll (defense counsel): If your Honor please, may I approach the bench?

(Tr. 34)

The resulting discussions at the bench, including an objection to the testimony about the marijuana, occurred outside the hearing of the jury, and presumably outside the hearing of the witness. (Tr. 35). While it is true that the trial judge told the prosecutor to "stay away from any other crimes", *id.*, nowhere in the record is there any indication that the witness was told not to say anything about other crimes, or marijuana. Nonetheless, the majority finds "[t]he fact that Officer Whittington saw fit to disregard the admonition of the court and reveal this evidence", as the Court's basis for finding that the testimony was an evidentiary harpoon. How this "fact" is discovered by the majority from the record is unclear to me. It is elementary that every witness is sworn to tell the *whole* truth. The question, as posed, asked the officer if the *total* amount of *controlled drugs* was limited to the value of the PCP.

(Tr. 39). Therefore, without being apprised of the objection to his previous testimony about the marijuana, it was proper for the officer to complete his initial response of "right" with a follow-up answer that was the whole truth concerning the total amount of controlled drugs.

In any event, it is improbable that the statement can be categorized as voluntary in the sense that it was simply offered out of the clear blue sky. *See Anderson v. State*, 704 P.2d 499, 501 (Okl.Cr.1985). Absent evidence on the record that the officer was informed not to repeat his testimony about the discovery of the marijuana it seems manifestly repugnant to suddenly classify his truthful testimony as an evidentiary harpoon. An experienced police officer cannot be transformed into a legal scholar, making *sua sponte* decisions about which evidence his testimony should include, simply because he has testified in hundreds of trials. Moreover, to allege that the officer's testimony about the marijuana was in response to "the question, 'Okay'" is frivolous. (Appellant's brief 12).

LUMPKIN, Vice Presiding Judge: concurs in result.

I join with Judge Park's analysis and determination that Officer Whittington's testimony did not constitute an evidentiary harpoon. The evidence was properly admitted and was not error.

I agree with the Court's application of 22 O.S.Supp.1990, §§ 929 and 1066 in this case. It is just this type of fact situation which makes the appellate review process of reweighing evidence to correct procedural errors extremely difficult. The new statutory process which allows us to remand the case for resentencing provides the trier of fact the opportunity to evaluate the evidence pursuant to a proper instruction of the law and render an appropriate sentence. However, I do not agree with the Court's statement that "[t]he strong statutory policy of the State of Oklahoma is that a criminal defendant be sentenced by a jury". A correct reading of 22 O.S. 1981, § 926, in conjunction with 22 O.S.

1981, §§ 927, 928, 982 and 991a et seq, reveals that the statutory policy is that, if he requests it, a defendant has a right to have a jury recommend a sentence in the first instance. This concept was recently addressed in *Livingston v. State*, 795 P.2d 1055, 1066 (Okl.Cr.1990), as we discussed and defined our powers of appellate review. Oklahoma statutes are clear, individuals convicted of a crime are sentenced by the trial judge based not only on the recommendation of the jury, but also on evidence provided through the presentence investigation and sentencing hearing, which was not available to the jury. If the jury, in fact, set the actual sentence, the sentencing powers enumerated in 22 O.S.1981, § 991a et seq. would be without force or effect. The only exception to this rule is when the court has no alternative in the sentencing of a defendant. See *Hall v. State*, 548 P.2d 649 (Okl.Cr.1976), *Smith v. State*, 594 P.2d 784 (Okl.Cr.1979).